**OUTTEN & GOLDEN LLP**
Gregory Chiarello
Ossai Miazad*
Christopher M. McNerney*
685 Third Avenue, 25th Floor
New York, New York 10017

Mikael A. Rojas*
OUTTEN & GOLDEN LLP
601 Massachusetts Avenue NW, Suite 200W
Washington, DC 20001

**YOUTH REPRESENT**
Michael C. Pope*
11 Park Place, Suite 1512
New York, New York 10007

*Pro hac vice* motions forthcoming

*Attorneys for Plaintiff and the Putative Class*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| Jacqueline Ramos, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Walmart, Inc.,<br><br>Defendant. | Case No.<br><br>CLASS ACTION COMPLAINT |

Plaintiff Jacqueline Ramos, individually and on behalf of all others similarly situated, alleges upon personal knowledge as to herself and upon information and belief as to other matters, as follows:

**NATURE OF THE ACTION**

1. Defendant Walmart, Inc. ("Walmart"), is the nation's largest private employer, with a ubiquitous presence throughout every corner of this nation.

2. Each year, Walmart hires thousands of individuals across the country, but each year it also denies employment to many qualified applicants because of unrelated and/or stale criminal history, pursuit to an overbroad criminal history screen that fails to account for evidence of rehabilitation or mitigating circumstances.

3. Walmart's criminal history policy must be understood in the context of the reality that individuals who are Black or Latinx are significantly over arrested, convicted and incarcerated in the United States.

4. As the U.S. Commission on Civil Rights has found, "[w]hen the collateral consequences [of criminal convictions] are unrelated [either to the underlying crime for which a person has been convicted or to a public safety purpose], their imposition generally negatively affects public safety and the public good."[1] Therefore, "[e]mployers should not automatically disqualify a candidate with a criminal record, except in circumstances when the criminal record *directly* conflicts with the scope of employment."[2]

5. Plaintiff Ramos is just such an impacted individual: a Black and Latinx woman who had a prior criminal conviction at the time she applied for employment at Walmart, that was unrelated to the employment for which she applied.

6. Plaintiff Ramos was qualified to work for Walmart. Despite her conviction history, she had worked hard to better her situation and seek out gainful employment, and had submitted to Walmart strong evidence of her rehabilitation and mitigating circumstances—including that she had successfully completed a six-month internship with a Walmart subsidiary

---

[1] U.S. Commission on Civil Rights, *Collateral Consequences: The Crossroads of Punishment, Redemption, and the Effects on Communities* (June 2019), at 133, *available at* https://www.usccr.gov/pubs/2019/06-13-Collateral-Consequences.pdf.
[2] *Id.* at 137 (emphasis added).

doing the same entry-level work she would perform for Walmart, and her supervisor specifically recommended her for employment by Walmart.

7. Despite submitting this information, Walmart failed to account for, or even consider, the evidence of rehabilitation and mitigating circumstances of Ms. Ramos.

8. Plaintiff's experience is not an isolated situation, but rather is part of a broader pattern where Walmart employs an overbroad criminal history screen that fails to actually assess whether an applicant's convictions are job-related or create a business necessity for denial of employment—including by failing to account for evidence of rehabilitation or mitigating circumstances—resulting in Walmart's disproportionate screening out of Black and Latinx applicants.

9. As a result of Walmart's actions, Plaintiff brings two classwide claims alleging that Walmart's criminal history screening policy and practice perpetuates the gross racial disparities in the criminal justice system into its applicant pool, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq*. and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*

10. Through this lawsuit, Plaintiff will show that the conduct outlined in this Complaint constitutes unlawful discrimination and clearly violates Title VII and the NJLAD in text and spirit, which aims to remove any unjustified, discriminatory barriers to employment like Walmart's criminal history screen.

11. Plaintiff seeks monetary damages, and injunctive and declaratory relief on behalf of herself and all other Walmart applicants similarly impacted nationwide and in New Jersey, as outlined further below.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3) and jurisdiction over Plaintiff's NJLAD claim pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

13. Plaintiff's NJLAD disparate impact claim is so closely related to her Title VII disparate impact claim that they form part of the same case or controversy under Article III of the United States Constitution. Through both claims, Plaintiff challenges the same policy and practice of Walmart's.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e–5(f)(3) because a substantial part of the events and omissions giving rise to the claim alleged herein occurred in this District, and but for Walmart's actions, Plaintiff Ramos would have continued to work in this District for Walmart.

15. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

16. Plaintiff has exhausted their administrative remedies and complied with all statutory prerequisites to her Title VII and NJLAD claims.

## PARTIES

**Plaintiff**

17. Plaintiff Ramos and the putative Class Members she seeks to represent are each "persons," "individuals," and "applicants for employment" within the meaning of Title VII.

18. Plaintiff Ramos is a Black and Latinx woman.

19. Plaintiff Ramos is currently a resident of Brooklyn, New York.

20. Plaintiff Ramos had at the time of her application to Walmart for employment, and continues to have, one felony conviction.

**Defendant Walmart, Inc. ("Walmart")**

21. Walmart is the world's largest company by revenue, and a purveyor of all manner of goods through a robust online presence and brick and mortar locations worldwide.

22. Walmart has approximately 10,526 locations in 24 countries, and approximately 5,342 locations in the United States.

23. Walmart has locations in all 50 States, the District of Columbia, and Puerto Rico.

24. Walmart has approximately 70 locations throughout New Jersey.

25. Walmart employs approximately 2,300,000 employees worldwide and approximately 1,600,000 in the United States in a wide variety of jobs.

26. Walmart is the largest private employer in the United States.

27. Walmart is headquartered in Bentonville, Arkansas.

28. At all relevant times, Walmart has been an employer as defined by Title VII and the NJLAD.

## STATEMENT OF FACTS

**Plaintiff Jacqueline Ramos**

29. On our around August 2019, Ms. Ramos began a full-time six month internship at a Walmart subsidiary, Jet.com, in Hoboken, New Jersey. It was an entry level job that did not require any prior technical training, qualifications, or certifications. This job also did not require any higher education.

30. The principle goal of the internship, as Ms. Ramos understood it, was to demonstrate that Ms. Ramos would be a suitable employee for Walmart.

31. In her internship, Ms. Ramos performed entry level IT support.

32. Ms. Ramos's job duties included providing basic desktop computer support for

Walmart employees, answering Walmart employee's computer questions that were submitted to the team through an online ticketing system, and supporting new hired employees with setting up their new accounts and computers.

33. Towards the end of her internship, Ms. Ramos's supervisor, Michael Jones, encouraged her to apply to work directly for Walmart for an entry level IT support position that would involve performing substantially the same work that she had established she could perform through her internship.

34. Like with her internship, Ms. Ramos was not required to have a college degree or submit any evidence of technical training, qualifications or certifications to apply for this position.

35. Following Mr. Jones's advice, on or around January 2020, Ms. Ramos applied to work for Walmart.

36. Soon thereafter, Ms. Ramos successfully interviewed with two Walmart supervisors.

37. As a result of that successful interview, on or about January 28, 2020, Ms. Ramos was sent an email by Walmart's third party criminal history screening company, First Advantage, explaining that she would have to authorize a background check as part of her application process.

38. That same day, Ms. Ramos completed the forms necessary to authorize First Advantage to perform a criminal background check and, as requested, disclosed her sole felony conviction, that occurred in 2017.

39. On or about January 31, 2020, Ms. Ramos received an offer letter from the Walmart Hiring team formally offering her employment.

40. On or about February 3, 2020, Ms. Ramos received another email from First Advantage, with the subject line: "URGENT Request for Information – Your WALMART INC Background Screening." The email instructed Ms. Ramos to provide specific details about her conviction.

41. Later that day, Ms. Ramos logged into First Advantage's online portal, and explained the circumstances of her conviction and provided information contextualizing her conviction and providing subsequent evidence of rehabilitation.

42. Of note, Ms. Ramos explained that she was with friends who committed the crime in question, and that she took a plea deal for fear of receiving a lengthy prison sentence. She also explained that since her conviction, she had focused on securing employment and enrolled in a workforce development program that led to her internship with Jet.com. She further noted her plan to enroll in a program to obtain a bachelor's degree in computer science.

43. On or about the very next day, February 4, 2020, Ms. Ramos received an email from First Advantage that informed her that First Advantage conducted a background check and Walmart was considering revoking her job offer based on the results of the report.

44. Shortly thereafter, Ms. Ramos contacted her former supervisor, Mr. Jones, and the Walmart recruiter who had been her point of contact through the application process, Sara Schultz. Ms. Ramos wanted to know if there was any additionally information she could provide to assist in Walmart's assessment of her employment.

45. Over the course of approximately the next week, both Mr. Jones and Ms. Schultz informed Ms. Ramos that the decision was out of their hands, and there was nothing they could do. Ms. Ramos understood this to mean that the decision was to be made at the corporate level.

46. On or about February 12, 2020, Ms. Ramos received another email from First

Advantage. This email stated that her job offer was being rescinded by Walmart because of her criminal history.

47. Shortly thereafter, Ms. Ramos again contacted Ms. Shultz via text to ask, again, if there was anything she could do to have her offer reinstated. On or around February 19, 2020, Ms. Shultz emailed Ms. Ramos stating that her job offer was officially rescinded.

48. Ms. Ramos continued to try to convince Walmart to reinstate her position, this time through counsel, explaining that her conviction, especially in light of her evidence of rehabilitation and mitigation, was not job-related and should not disqualify her from employment with Walmart.

49. On or about June 26, 2020, Walmart responded that, despite the information she had provided, it viewed Ms. Ramos as having "provided no evidence of rehabilitation efforts or mitigating circumstances" and that it would not revisit its denial of employment.

50. Accordingly, Ms. Ramos filed a classwide charge of discrimination with the EEOC and has now brought suit.

**Factual Allegations Common to Plaintiff and All Putative Class Members**

*Walmart Uses a Uniform and Centrally Administered Criminal History Screening Policy That Is Devoid of Individualized Analysis and Fails to Account For Evidence of Rehabilitation or Mitigating Circumstances.*

51. Walmart employs an overbroad criminal history screening policy that is devoid of individualized analysis.

52. Pursuant to Walmart's policy, a select, limited group of Walmart employees located at its corporate headquarters evaluate applicant criminal history, employing a uniform and centrally administered process.

53. An Applicant's potential supervisors, and the individuals who interview an

applicant, have no input whatsoever as to whether Walmart will disqualify an applicant because of their criminal history.

54. In fact, pursuant to policy, Walmart will discipline or even terminate an employee for discussing an applicant's criminal history.

55. While Walmart purports to solicit evidence of rehabilitation or mitigating circumstances to consider as part of its criminal history review, the company lacks sufficient processes to meaningfully account for this information.

56. To the contrary, upon information and belief, Walmart's standard operating procedure is that it typically will not alter a determination that criminal history is disqualifying because of evidence of rehabilitation or mitigating circumstances.

57. For example, in the case of Ramos, Walmart not only failed to properly consider the evidence of rehabilitation and mitigating circumstances that she submitted, it refused to even acknowledge she had submitted such evidence.

58. As a result of its overbroad policy, Walmart denied employment to Plaintiff and disproportionately denies employment to countless other Black and Latinx applicants.

**Walmart's Criminal History Policy Has a Disparate Impact on Black and Latinx Applicants.**

59. Title VII and the NJLAD prohibit employment policies and practices that have a disparate impact on protected groups.  *See* 42 U.S.C. §§ 2000e *et seq*.; N.J.S.A. § 10:5-1 *et seq*.

60. As the U.S. Commission on Civil Rights reported, "when employers use criminal background checks to indiscriminately disqualify all applicants with criminal records, these employers severely curtail employment opportunities for formerly incarcerated people"[3] and "[B]lack and Latino individuals are likelier to have criminal records than white and Asian

---

[3]   *See supra* note 1, p. 42.

people[.]."[4]

61.     The U.S. Census Bureau reports that although Black and Latinx individuals comprise only 29% of the U.S. population, they make up 57% of the U.S. prison population.[5] This results in imprisonment rates for Black and Latinx individuals that are 5.9 and 3.1 times the rate for white adults, respectively.[6]  And, "these disparities exist for both the least and most serious offenses."[7]

62.     According to a report to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance, "[i]n 2010, 8% of all adults in the United States had a felony conviction on their record" but "[a]mong African-American men, the rate was one in three."[8]  Additionally, in 2016, of the 277,000 people imprisoned for a drug offense, over 56% were Black or Latinx individuals.[9]

63.     Like with the United States, Black and Latinx individuals also are overincarcerated in New Jersey, when compared with whites.[10]

64.     It is undisputed among social science researchers that Black individuals interact

---

[4]     *Id.*

[5]     Report of The Sentencing Project to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance: Regarding Racial Disparities in the United States Criminal Justice System, The Sentencing Project (2018) at 9, *available at* https://www.sentencingproject.org/wp-content/uploads/2018/04/UN-Report-on-Racial-Disparities.pdf.

[6]     *See id.* at 6-7.

[7]     *Id.* at 7.

[8]     *See* supra note 5, p. 7; *see also id.* at 1 (explaining that racial and ethnic disparities among women are also prevalent).

[9]     *See* U.S. Department of Justice, Bureau of Justices Statistics Special Report, *Prevalence of Imprisonment in the U.S. Prison Population, 1974-2001*, 5 (2003); *See generally* Nazgol Ghandnoosh, Ph.D., Race and Punishment: Racial Perceptions of Crime and Support for Punitive Polices (September 2014).

[10]    *See, e.g.*, Prison Policy Initiative, *New Jersey profile*, https://www.prisonpolicy.org/profiles/NJ.html; *see also* Prison Policy Initiative, *Blacks Are Overrepresented in New Jersey Prisons and Jails*, at

with the criminal justice system at rates that vastly outnumber the rates of incarceration for whites. As a result, the impact of a criminal record is much more severe on Black job applicants than it is on white applicants.[11]

65.     Audit studies conducted by researchers at Harvard and Princeton Universities also have found that even among people with criminal records, Black applicants are particularly disadvantaged in the job market compared to white people with criminal records.[12]

66.     Given these statistics, and Walmart's ubiquitous presence throughout ever corner of the nation, it is more than plausible that by screening for criminal history, Walmart's hiring practices import the nation's severe racial disparities in conviction rates, resulting in a policy and practice that disproportionately screens out Black and Latinx applicants, when compared with white applicants.

***Walmart's Criminal History Screening Policy Is Not Job-Related Or Consistent With Business Necessity.***

67.     Walmart's policy and practice of denying employment to individuals with criminal convictions is far too over-inclusive to meet the standards of job-relatedness and consistency with business necessity.

---

https://www.prisonpolicy.org/graphs/2010percent/NJ_Blacks_2010.html (graph reflecting overincarceration of Black individuals); Prison Policy Initiative, *Hispanics Are Overrepresented in New Jersey Prisons and Jails* at https://www.prisonpolicy.org/graphs/2010percent/NJ_Hispanics_2010.html (graph reflecting overincarceration of Latinx individuals).
[11]     *See generally* Devah Pager, *Marked: Race, Crime, and Finding Work in an Era of Mass Incarceration*, Chicago, IL: University Of Chicago Press (2007).
[12]     Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals Am. Acad. Pol. & Soc. Sci. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61 (2003).

68. Having a conviction is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job. Upon information and belief, no reliable studies or empirical data suggest that applicants with criminal records are more likely to engage in terminable offenses.[13]

69. Highlighting that Walmart's criminal history screening policy does not accurately account for its business necessity and/or evaluate the job-relatedness of an applicant's criminal history, Walmart does not consider input from relevant supervisors as part of its analysis of whether a conviction is job-related, or actually assess an applicant's evidence of mitigation or rehabilitation.

70. Walmart also routinely hires individuals, and allows them to start working, before completing a full criminal history background check, illustrating that Walmart itself does not view its criminal history screening process as necessary to protect the safety of its workforce or customers.

71. Upon information and belief, Walmart has not validated its criminal history policies and practices consistent with the Uniform Guidelines on Employee Selection Procedures.

72. There also are less discriminatory alternatives that would have better achieved any legitimate business purpose of Walmart.

73. Less discriminatory alternatives include, but are not limited to: (1) considering all applicants with a record of conviction for a crime that by its nature does not pose a legitimate threat to the public safety or risk of workplace misconduct; and (2) instituting a meaningful

---

[13] *See, e.g.*, Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015).

process for Walmart to account for supervisors' input, and an applicant's evidence of mitigation and/or rehabilitation.

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this case as a proposed class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and others similarly situated.

75. Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (c)(4) seeking injunctive and declaratory relief.

76. Plaintiff also brings this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and/or (c)(4) seeking backpay, monetary damages, and other make-whole relief.

77. Plaintiff asserts her First Cause of Action against Walmart on behalf of the "Nationwide Class" defined as follows:

> All Black and Latinx individuals nationwide who, during the relevant statute of limitations period, were denied employment at Walmart based in whole or in part on their criminal history.

78. Plaintiff asserts her Second Cause of Action against Walmart on behalf of the "New Jersey Class" defined as follows:

> All Black and Latinx individuals in New Jersey who, during the relevant statute of limitations period, were denied employment at Walmart based in whole or in part on their criminal history.

79. Together, the Nationwide Class and New Jersey Class are the "Classes."

80. The members of the Classes are collectively referred to as "Class Members."

81. Plaintiff reserves the right to amend the definition of above-defined Classes based on discovery or legal developments.

82. The Class Members identified herein are so numerous that joinder of all members is impracticable.  Walmart is a largest employer in the United States.  The number of applicants harmed by Walmart's violations of the law is far greater than feasibly could be addressed

through joinder. The precise number is uniquely within Walmart's possession, and Class Members may be notified of the pendency of this action by published, mailed and/or e-mailed notice.

83. There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members. Common legal and factual questions include, among others:

   a. Whether Walmart's policy and practice to exclude job applicants based on their criminal history has a discriminatory disparate impact on Black and and/or Latinx individuals;

   b. Whether Walmart's policy and practice to exclude job applicants based on their criminal history is job-related and/or consistent with business necessity;

   c. Whether Walmart systemically assesses applicants' evidence of rehabilitation or mitigating circumstances when assessing criminal history;

   d. Whether there was a less discriminatory policy and practice that would have met Walmart's legitimate needs;

   e. Whether Class Members are entitlement to damages; and

   f. Whether a declaratory judgment and/or injunctive or other equitable relief is warranted regarding Walmart's policies and practices.

84. Plaintiff is a member of the Classes she seeks to represent. Walmart took discriminatory adverse action against Plaintiff based on her criminal history.

85. Plaintiff's claim is typical of the claim of the Classes she seeks to represent, because Plaintiff: (1) applied for a job with Walmart within the relevant time period; (2) was subjected to the challenged criminal history screening process for applicants; and (3) was denied a position with Walmart because of her criminal history. This claim is shared by each and every Class Member. Upon information and belief, it is Walmart's standard practice is to take adverse

actions against applicants based on criminal history in a manner that is discriminatory, not job related, and inconsistent with business necessity.

86. Plaintiff will fairly and adequately represent and protect the interests of Class Members because her interests coincide with, and are not antagonistic to, the interests of the Class Members she seeks to represent. Plaintiff has retained counsel who are competent and experienced in complex class actions, including litigation pertaining to Title VII, criminal background checks, disparate impact litigation, other employment litigation, and the intersection thereof. There is no conflict between Plaintiff and the Class Members.

87. A class action is superior to other available methods for the fair and efficient adjudication of this litigation. Class Members have been damaged and are entitled to recovery as a result of Walmart's uniform policies and practices. Walmart has acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Plaintiff and the Class Members as a whole. Because Walmart has maintained a common policy of denying employment to individuals with criminal histories but may not have explained that policy to all Class Members, many Class Members may be unaware that their rights have been violated. Judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would otherwise be placed on the judicial system by the filing of many similar suits by individually harmed persons. There are no obstacles to the effective and efficient management of this lawsuit as a class action.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Disparate Impact Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq*.**
**(On Behalf of Plaintiff and the Nationwide Class)**

88. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

89. Plaintiff brings this claim on her own behalf and on behalf of the Nationwide Class.

90. Plaintiff timely filed a charge with the EEOC, with class-wide allegations, and has exhausted her administrative remedies.

91. Walmart's criminal history screening policy and practice of denying employment opportunities to individuals with criminal convictions has harmed, and continues to harm, Plaintiff, and constitutes unlawful discrimination on the basis of race, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

92. Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions had and continues to have a disparate impact on Black and Latinx individuals and is neither job related nor consistent with business necessity. Even if Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

93. Walmart's conduct has caused, and continues to cause, Plaintiff and the members of the Nationwide Class losses in earnings and other employment benefits.

94. Plaintiff and the Class also seek injunctive and declaratory relief to correct Walmart's discriminatory policies and practices.

**SECOND CLAIM FOR RELIEF**
**Disparate Impact Discrimination**
**New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq*.**
**(On Behalf of Plaintiff and the New Jersey Class)**

95. Plaintiff incorporates by reference the allegations in all preceding paragraphs.

96. Plaintiff brings this claim on her own behalf and on behalf of the New Jersey Class.

97. Plaintiff timely dual-filed her EEOC charge with the New Jersey State Division on Human Rights, with class-wide allegations, and has thus exhausted her administrative remedies.

98. Walmart's criminal history screening policy and practice of denying employment opportunities to individuals with criminal convictions has harmed, and continues to harm, Plaintiff, and constitutes unlawful discrimination on the basis of race, color, and/or national origin in violation of N.J.S.A. § 10:5-1 *et seq.*

99. Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions had and continues to have a disparate impact on Black and Latinx individuals and is neither job related nor consistent with business necessity.  Even if Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

100. Walmart's conduct has caused, and continues to cause, Plaintiff and the members of the New Jersey Class losses in earnings and other employment benefits.

101. Plaintiff and the Class also seek injunctive and declaratory relief to correct Walmart's discriminatory policies and practices.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and Class Members pray for relief as follows:

a. A declaratory judgment that the practices complained of herein are unlawful and violate Title VII and the NJLAD;

b. A preliminary and permanent injunction against Walmart and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

  c. An order that Walmart institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants with criminal records who would be eligible under application of Title VII and the NJLAD and that Walmart eradicate the effects of past and present unlawful employment practices;

  d. Certification of the case as a class action on behalf of the proposed Class;

  e. Designation of Plaintiff as representative of Class Members;

  f. Designation of Plaintiff's counsel of record as Class Counsel;

  g. Restoring of Plaintiff and Class Members to their rightful positions at Walmart or those positions equivalent at Walmart (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

  h. An award of backpay;

  i. An award of nominal and/or exemplary damages;

  j. Punitive and/or liquidated damages under the NJLAD to the extent allowable by law;

  k. An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

  l. Such other injunctive and/or declaratory or other equitable relief that is necessary to correct Walmart's discriminatory policies and practices;

  m. Pre-judgment and post-judgment interest, as provided by law;

  n. Payment of a reasonable service award to Plaintiff, in recognition of the services she rendered and will continue to render to Class Members, and the risks they have taken and will take; and

  o. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York
   July 19, 2021

            Respectfully submitted,

            By:  */s/ Gregory Chiarello*
            **OUTTEN & GOLDEN LLP**
            Gregory Chiarello
            Ossai Miazad*
            Christopher M. McNerney*
            685 Third Avenue, 25th Floor

New York, New York 10017
Telephone: (212) 245-1000
E-mail: gchiarello@outtengolden.com
E-mail: om@outtengolden.com
E-mail: cmcnerney@outtengolden.com

Mikael A. Rojas*
601 Massachusetts Avenue NW, Suite 200W
Washington, DC 20001
Tel.: (202) 847-4400
Email: mrojas@outtengolden.com

**YOUTH REPRESENT**
Michael C. Pope*
11 Park Place, Suite 1512
New York, New York 10007
Tel: (646) 759-8080
E-mail: mpope@youthrepresent.com

**Pro hac vice* motions forthcoming

*Attorneys for Plaintiff and the Putative Class*