UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE RAMOS and EDWIN JOHNSON, individually and on behalf of all others similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>WALMART, INC.,<br><br>　　　　　　　　　　　Defendant. | Civil Action No. 21-13827-BRM-AME<br><br>OPINION and ORDER |

**ESPINOSA**, Magistrate Judge

　　This matter comes before the Court on the motion filed by named plaintiffs Jacqueline Ramos and Edwin Johnson ("Plaintiffs") to quash six subpoenas served by defendant Walmart, Inc. ("Walmart") on third-party companies with which Plaintiffs had previously been employed or sought employment [ECF 89]. Walmart opposes the motion. In its discretion, the Court decides the motion on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b). For the following reasons, the motion to quash is granted.

**I.　BACKGROUND**

　　This is a disparate impact action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, as amended ("Title VII"). It arises out of Walmart's failure to hire Plaintiffs due to Walmart's allegedly discriminatory criminal background screening. According to the operative Second Amended Class Action Complaint ("Complaint"), Ramos and Johnson each applied to Walmart, received job offers, and had their offers rescinded following the criminal background check. (Compl. ¶¶ 51, 58, 63, 68.) Plaintiffs allege Walmart's criminal background policy and procedure disproportionately and unlawfully affects Black and Latino

1

individuals, in violation of Title VII. (*Id.* ¶¶ 2-3, 12-13.) They bring this action on behalf of themselves and a putative nationwide class of persons denied employment at Walmart as a result of the criminal background check.

On August 31, 2022, Walmart served Plaintiffs with a notice of intent to serve document subpoenas on six companies, five that employed either Ramos or Johnson prior to the time they applied for jobs at Walmart and one with which Johnson sought employment after he was denied a job at Walmart. For simplicity, the Court will refer to the six subpoenas at issue collectively as the "Employer Subpoenas." The Employer Subpoenas request substantially identical information as to either Ramos or Johnson, as applicable. In brief, they contain the following demands: (1) all documents relating to the employment application; (2) all documents relating to the job interview; (3) all documents relating to any pre-employment screen or criminal background check; (4) all documents relating to performance evaluations; (5) all documents pertaining to misconduct or disciplinary investigations; and (6) all documents pertaining to termination from employment.[1] (McNerney Decl., Ex. A.)

Plaintiffs contacted Walmart immediately upon receiving notice, requesting an opportunity to meet and confer about the content and need for the third-party discovery, including the possibility of narrowing the scope of the Employer Subpoenas. (*Id.*, Ex. B at 5.) Walmart did not engage in substantive discussion with Plaintiffs before proceeding to serve the Employer Subpoenas, on or about September 1, 2022. (*Id.* at 2-3.) After obtaining leave of Court, Plaintiffs filed this motion to quash the Employer Subpoenas on September 21, 2022.[2]

---

[1] The subpoena served on the company that did not respond to Johnson's job application seeks only categories (1) through (3).
[2] The Court's September 12, 2022 Order granting leave to file this motion also stayed the targeted third-party companies' deadline to respond to the Employer Subpoenas, pending decision on this motion. *See* Text Order, at ECF 88.

**II.     DISCUSSION**

    **A.     Legal Standard**

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas. Pursuant to the rule, a party may serve a subpoena on a third-party to obtain documents, testimony, and/or other information falling within the scope of permissible discovery under the federal rules. *See* Fed. R. Civ. P. 45(c). The rule also provides a mechanism for limiting or prohibiting the subpoenaed discovery. *See* Fed. R. Civ. P. 45(d). Rule 45(d)(3) provides, in relevant part: "On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . . (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A). A party moving to quash a subpoena bears the burden of demonstrating that termination of an otherwise valid subpoena is warranted on one of the grounds set forth in Rule 45(d)(3). *Strike 3 Holdings, LLC v. Doe Subscriber Assigned IP Address 173.63.148.25*, No. 19-10252, 2020 WL 5525549, at * 2 (D.N.J. Sept. 14, 2020).

However, when objections to discovery are raised, the party seeking discovery must demonstrate, as an initial matter, that the information sought falls within the permissible scope of discovery under Federal Rule of Civil Procedure 26(b). *Cordero v. Warren*, No. 12-2136, 2016 WL 8199305, at *2 (D.N.J. Oct. 4, 2016), *aff'd* 2017 WL 2367049 (D.N.J. May 31, 2017); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000) (holding that the party seeking discovery must show "the information sought is relevant to the subject matter of the action and may lead to admissible evidence."). Indeed, discovery sought by subpoena must fall within the scope of Rule 26(b). *In re Novo Nordisk Sec. Litig.*, 530 F. Supp. 3d 495, 501 (D.N.J. 2021) ("The scope of discovery pursuant to Rule 45 is the same as Rule 26(b)."); *OMS Investments, Inc. v. Lebanon*

*Seaboard Corp.,* No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008) (holding same). Rule 26, in relevant part, permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The principle that the party seeking discovery bears the burden to establish its relevance and proportionality applies with equal force in the context of a motion to quash a subpoena. *NovoNordisk Sec. Litig.,* 530 F. Supp. 3d at 501.

"Once the subpoenaing party has shown that the documents requested are relevant, the objecting party must demonstrate why discovery should nevertheless be denied." *Id. See also AP Links, LLC v. Russ*, 299 F.R.D. 7, 11 (E.D.N.Y. 2014) ("Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome.") (quotation omitted). In evaluating the reasonableness and enforceability of a subpoena, the court may consider:

> 1) relevance, 2) the need of the party for the documents, 3) the breadth of the document request, 4) the time period covered by it, 5) the particularity with which the documents are described, 6) the burden imposed, and 7) the subpoena recipient's status as a nonparty to the litigation.

*NovoNordisk Sec. Litig.,* 530 F. Supp. 3d at 501 (citing *Biotechnology Value Fund, L.P. v. Celera Corp.*, 2014 WL 4272732, at *2 (D.N.J. Aug. 28, 2014)). "Under Rule 45, 'courts have significant discretion' to quash or modify a subpoena where the discovery sought is irrelevant, or compliance with the subpoena would be 'unreasonable and oppressive.'" *Walgreens Speciality Pharm., LLC v. Atrium Admin. Svcs.*, Inc., No. 19-12756, 2020 WL 6042280, at *3 (D.N.J. Oct. 13, 2020) (quoting *First Sealord Sur. v. Dunkin & Devries Ins. Agency*, 918 F. Supp. 2d 362, 382-83 (E.D. Pa. 2013)); *see also Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter &*

*Griswold, LLP*, No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (holding that a district court "has broad discretion regarding the enforcement of subpoenas.").

    **B.**    **Analysis**

Plaintiffs' grounds for moving to quash the Employer Subpoenas are threefold. Primarily, they argue that information pertaining to their non-Walmart employment is irrelevant to the claims and defenses in this failure-to-hire employment discrimination case. Plaintiffs emphasize that their Title VII disparate impact claim turns on whether Walmart's criminal background check policy is related to the Walmart jobs for which they and other applicants were screened and thus justified by business necessity. In other words, Plaintiffs contend that the hiring practices utilized and personnel records maintained by *other* companies for *other* jobs Plaintiffs pursued or held have no bearing on the liability issues in this Title VII case, which concerns Walmart's facially neutral but in-practice discriminatory policy. Additionally, Plaintiffs argue the Employer Subpoenas are overly broad, pointing out that the six categories of documents demanded amount to a request for the entirety of the employment files. Lastly, Plaintiffs argue that any peripheral relevance of the employment documents and/or professed need for such third-party discovery is far outweighed by their risk of causing unfair prejudice to Plaintiffs' prospects of future employment with the subpoenaed companies and/or ability to rely on those companies as employment references.

In opposition, Walmart asserts, as a threshold matter, that Plaintiffs lack standing to challenge the Employer Subpoenas because the obligation to respond to the document requests does not apply to them. Walmart further argues that that, even if the Court were to entertain Plaintiffs' substantive objections, the Employer Subpoenas should not be quashed because they seek information relevant to three issues concerning this putative class action litigation: the Title

5

VII burden of proof analysis, mitigation of damages, and Plaintiffs' credibility. Finally, Walmart argues Plaintiffs' prejudice argument is based on mere speculation, contending Plaintiffs have not demonstrated they will or are even likely to suffer any harm from the production of documents responsive to the Employer Subpoenas. Thus, Walmart maintains the relevance of the information sought together with the lack of prejudice render the Employer Subpoenas appropriate and enforceable under Rule 45.

Initially, the Court addresses the question of Plaintiffs' standing to bring this motion to quash under Rule 45(d). While, generally, only the subpoenaed third party has standing to challenge a subpoena, a party to the litigation may move to quash when he or she has a personal right or privilege with respect to information sought by the subpoena. *Schmulovich v. 1161 Rt. 9 LLC*, No. 07-597, 2007 WL 2362598, at *2 (D.N.J. Aug. 15, 2007); *see also Malibu Media, LLC v. Doe*, No. 15-1742, 2015 WL 5996319, at *2 (D.N.J. Oct. 14, 2015) (holding a defendant had sufficient interest in his personal identifying information to seek an order quashing a subpoena to a third party internet service provider). However, in *Gross v. City of Jersey City*, this Court held that a plaintiff suing a current employer for employment discrimination, among other claims, asserted a sufficient privacy interest in the information contained in her third-party employment records to confer standing to bring a motion to quash those subpoenas. *See Gross v. City of Jersey City*, No. 18-9802, 2021 U.S. Dist. LEXIS 177558, at *8-9 (D.N.J. Sept. 17, 2021). As in this case, the plaintiff in *Gross* challenged the subpoenas to non-party employers on the basis of irrelevance and overbreadth. *Id.* at *9. Consistent with the conclusions reached by other courts, this Court found the plaintiff's privacy interest in her employment records were sufficient to establish standing under Rule 45 to support her motion to quash subpoenas for their production. *Id.* at 9; *see also Hashem v. Hunterdon County*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J.

6

May 18, 2017) (finding plaintiff in an employment discrimination action had standing to bring a motion to quash third party subpoenas, reasoning she had a sufficient privacy interest in her employment and education records); *Rodriguez v. NNR Global Logistics USA Inc.*, No. CV14-1766, 2016 WL 11673310, at *3 (E.D.N.Y. 2016) (citing cases and finding plaintiff had standing to move to quash subpoenas to her former employers because she "has a privacy interest with respect to information contained in her employment records."); *Hayes v. Easterday*, No. 11-0681, 2012 WL 13207471, at *2 (E.D. Pa. Jan. 24, 2012) (holding defendant had standing to challenge subpoenas seeking his employment records because he had a "personal right in those records sufficient to confer standing" and citing cases). Here, the Court finds, for reasons similar to those in the cases discussed and cited above, that Plaintiffs have a sufficient personal interest in the employment records sought in the Employer Subpoenas to satisfy the standing requirement for this motion to quash under Rule 45.[3]

The Court turns, then, to consider the relevance of the document requests. Generally, the Employer Subpoenas seek information pertaining to Plaintiffs' job-seeking activity and on-the-job performance for employment prior to their prospective employment with Walmart. They

---

[3] Moreover, even if, as Walmart argues, Rule 45(d) would not permit a motion to quash brought by a party that is not the target of the subpoena, Plaintiffs nevertheless have standing to move under Rule 26(c) for a protective order limiting, or altogether disallowing, the third-party discovery, on the basis that it seeks information beyond the scope of Rule 26(b)(1). *See Aetrex Worldwide, Inc. v. Burten Distribution, Inc.*, No. 13-1140, 2014 WL 7073466, at * 4-5 (D.N.J. Dec. 15, 2014) (citing *EEOC v. United Galaxy*, 2011 U.S. Dist. LEXIS 103398 at *5, 2011 WL 4072039, at *2 (D.N.J. Sept. 13, 2011)); *see also Walgreens Specialty Pharm., LLC v. Atrium Admin. Svcs.*, No. 19-12756, 2020 WL 6042280, at * (D.N.J. Oct. 13, 2020) (evaluating motion brought by party and third-parties challenging subpoenaed discovery under both Rule 45 standard to quash and Rule 26 standard for protective order); *In re Remec, Inc. Sec. Litig.*, No. 04-1948, 2008 WL 2282647, at *1 (S.D. Cal. May 30, 2008) ("A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery from a third party …."). Indeed, Rule 26(b)(2)(C) requires the Court to limit discovery if it is "outside the scope permitted by Rule 26(b)(1)," and Rule 26(c) permits the Court, for good cause, to issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Thus, regardless of Plaintiffs' standing under Rule 45, the Court may, in its discretion, examine the discoverability of the subpoenaed information with respect to its relevance, breadth and proportionality, and any concerns regarding privacy or confidentiality, under the Rule 26 rubric. *See Aetrex Worldwide*, 2014 WL 7073466, at *5-6. Accordingly, to the extent necessary to resolve this dispute, the Court construes Plaintiffs' motion to quash as also seeking a protective order limiting the specific third-party discovery at issue.

demand a broad range of information, including Plaintiffs' application materials, the non-party employers' interview records and notes, performance reviews, and disciplinary records. None of this information, pertaining exclusively to jobs Plaintiffs held with companies other than Walmart, has any apparent connection to Walmart's decision to rescind it employment offers based on the results of its own criminal background check of Plaintiffs.

The focus of this disparate impact case is on Walmart's hiring procedures and specifically its policy of screening of job applicants' criminal history, which Plaintiffs allege violates Title VII by disproportionately denying employment to Black and Latino applicants. Proving liability on this claim requires a shifting burden of proof analysis: once Plaintiffs have made a prima facie demonstration that implementation of the background check policy has resulted in significantly discriminatory hiring, Walmart must show that its policy is job-related and consistent with business necessity, i.e., that the criteria applied in the challenged practice are those that "define the minimum qualifications necessary to perform the job." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476-77 (3d Cir. 2011); *El v. Se. Penn. Transp. Auth. (SEPTA)*, 479 F.3d 232, 245 (3d Cir. 2007); 42 U.S.C. § 2000e-2(k)(1)(A)(i). Thus, the question of liability under Title VII revolves around Walmart's policy, the requirements of the Walmart jobs for which applicants were screened, and the connection of the policy's screening criteria to those job requirements. *See Griggs*, 401 U.S. at 431 (holding that business necessity is the touchstone of a Title VII disparate impact claim).

Information contained in other companies' employment files shed no light on whether Walmart's challenged hiring practice "is job related for the position in question and consistent with business necessity." 42 U.S.C. § 2000e-2(k)(1)(A)(i). In other words, Plaintiffs' hiring, performance, and termination materials pertaining to non-Walmart jobs is not relevant to

8

whether Walmart's criminal background screening is tailored to the Walmart jobs in question and justified as a matter of business necessity. This Title VII case does not concern Plaintiffs' ability to obtain employment elsewhere and/or how such other employers may have evaluated Plaintiffs. In short, the employment history material sought by the Employer Subpoenas is twice removed from the focus of this action: it pertains to neither the allegedly discriminatory employment practice at issue nor to the critical question of whether that practice is job-related in connection with the Walmart-specific employment.

Nevertheless, Walmart contends Plaintiffs have put their employment history at issue by alleging that Walmart's criminal background check policy was overbroad and failed to consider evidence of Plaintiffs' rehabilitation and mitigating circumstances, including their ability to obtain post-conviction employment at other companies. (*See* Compl. ¶¶ 99-100.) Walmart notes a Title VII claim for disparate impact may be established by pointing to a less discriminatory, alternative policy or practice. See 42 U.S.C. § 2000e-2(k)(1)(A)(ii); *N. Hudson Reg'l Fire & Rescue*, 665 F.3d at 477; *see also El*, 479 F.3d at 240 n.9 ("the successful assertion of the business necessity defense is not an ironclad shield; rather, the plaintiff can overcome it by showing that an alternative policy exists that would serve the employer's legitimate goals as well as the challenged policy with less of a discriminatory effect."). It underscores that Plaintiffs expressly allege there "are less discriminatory alternatives that would have better achieved any legitimate purpose of Walmart." (Compl. ¶ 100). Additionally, Walmart points to the Complaint's reliance on Plaintiff Johnson's success in employment held prior to applying to Walmart: The Complaint alleges:

> Walmart denied Mr. Johnson employment despite the time that had passed since his most recent conviction and strong evidence of subsequent rehabilitation in the form of relevant job experience. For example, Mr. Johnson had previously worked at a wholesale supermarket from

> approximately August 2016 to January 2020, and was working at a chain grocery store from June 2019 until he gave his notice as a result of the Walmart offer of employment.

(*Id.* ¶ 70.) According to Walmart, these allegations, taken together, indicate that Plaintiffs will rely on the other employers' less restrictive policies to prove there are sufficiently efficacious but less restrictive alternatives to meet Walmart's business needs. As such, Walmart maintains it is "entitled to probe into the Plaintiff's application history at those companies, the company's adjudication of their background screens, as well as the Plaintiffs' evaluations, discipline, and termination circumstances to assess how and whether Plaintiffs' prior convictions had any impact on their performance." (Opp'n at 6.)

This argument falls short of establishing the relevance of the Employer Subpoenas' document demands. Walmart connects Plaintiffs' allegations concerning their ability to obtain other employment and their assertion that a less discriminatory screening process was available in a manner the Complaint does not. In doing so, Walmart engineers an unsupported inference that Plaintiffs' will, or at the very least are likely to, proffer the other employers' hiring procedures as a better, feasible alternative to Walmart's allegedly unlawful screening policy. On their face, the allegations of the Complaint merely allege that Walmart's overbroad background check fails to give due consideration to Plaintiffs' ability to obtain and maintain employment with other companies. This basis for the purported relevance of the non-party employment files relies on speculation, an insufficient basis to bring the subpoenaed information within the ambit of Rule 26(b). *See Hashem v. Hunterdon County*, No. 15-8585, 2017 WL 2215122, at *3 (D.N.J. May 18, 2017).

In cases involving claims of employment discrimination or other employment-related misconduct, courts generally give careful scrutiny to an employer defendant's subpoena for

records related to the plaintiff's employment with third parties, against which plaintiff's claims are not directed. *See e.g.*, *Gross*, 2021 U.S. Dist. LEXIS 177558, at * 10-16 (closely examining various document requests contained in employer subpoenas to determine whether the issuing party had demonstrated a nexus between the discovery and the matters at issue); *Rodriguez v. NNR Global Logistics USA Inc.*, No. CV14-1766, 2016 WL 11673310, at *3 (E.D.N.Y. Mar. 31, 2016) (identifying the issue presented on a motion to quash subpoenas to the plaintiff's former employers as whether the work history information sought was relevant to the question of defendants' unlawful, discriminatory termination of the plaintiff under Title VII); *Vuona v. Merrill Lynch & Co.*, No. 10-CV-6529, 2011 WL 5553709, at *8 (S.D.N.Y. Nov. 15, 2011) (analyzing relevance of subpoenas for plaintiffs' work history records with non-party employers in an action alleging employer's decisions adversely affecting plaintiffs were motivated by gender bias, in violation of Title VII). Such third-party discovery is frequently disallowed or significantly limited, for lack of some demonstration by the defendant that the documents requested are narrowly tailored to the central issue in the case. *See Gross*, 2021 U.S. Dist. LEXIS 177558, at *16 (limiting employer subpoenas to records requests with a demonstrated connection to plaintiff's claims of employment discrimination and retaliation at issue); *Hashem*, 2017 WL 2215122, at *3 (quashing subpoenas for "all employment records" as going beyond the material "specifically relevant" to the issues for which defendants stated they needed the third-party discovery); *Rodriguez*, 2016 WL 11673310, at *5 (quashing subpoenas to plaintiff's prior employers, finding her performance in the prior employment bore no relevance to her performance with defendant and no relevance to whether defendant's termination of her employment was unlawfully discriminatory or based on valid considerations); *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114, at *2-4 (S.D.N.Y. Jan. 25, 2016) (quashing

subpoenas served on three former employers, on grounds of prejudice to plaintiff, overbreadth, and lack of relevance to the discrimination claims at issue, stating plaintiffs' prior performance with other employers had "little if any bearing" on whether defendant discriminated against plaintiff); *Vuona*, 2011 WL 5553709, at *8-9 (denying request to subpoena plaintiffs' former employers as irrelevant, rejecting employer defendant's argument that prior job performance had been put at issue by plaintiffs and concluding defendant failed to demonstrate its challenged employment decisions were influenced by or related to plaintiffs' work histories).

Here, although Walmart contends the Employer Subpoenas relate to a key element of a disparate impact claim, there is no indication that the hiring practices of the companies targeted in the Employer Subpoenas are actually at issue as proffered alternatives to Walmart's criminal background check policy. Moreover, even if they were, on this record, Walmart has not made clear how documents pertaining to the application and interview (Requests 1 and 2) and/or documents pertaining to Plaintiffs' performance, disciplinary history, and reasons for termination (Requests 4, 5, and 6) at a job with different requirements, management, and rules than the prospective employment at Walmart would be relevant to the question of alternate background check policies appropriate for the Walmart jobs for which Plaintiffs were considered. In short, Walmart fails to establish that the employment history documents sought in the Employer Subpoenas are relevant to the Title VII claim's burden of proof.

Walmart's relevance arguments pertaining to damages and credibility fare no better. As to damages, Walmart claims it needs the subpoenaed information to assess whether Plaintiffs have met their obligation to mitigate damages, arguing Plaintiffs' work experience and job position history will shed light on Plaintiffs' ability to obtain employment and earning capacity. The Court finds the connection between Plaintiffs' past employment records and mitigation of

damages related to the alleged harm at issue negligible at best. Mitigation of damages in an employment discrimination action typically focuses on a plaintiff's employment and efforts to obtain employment <u>after</u> the challenged employment action. *See Hashem*, 2017 WL 2215122, at *2 (emphasizing post-termination employment records may bear on the amount a plaintiff could have earned and rejecting defendants' argument that subpoenas to former employers were relevant to issue of mitigation of damages); *see also Hite v. Peters*, 2009 WL 1748860, at *4 (D.N.J. 2009) (finding subpoenas for employment records relevant to employment discrimination litigation, reasoning records that set forth plaintiff's dates of employment after the challenged termination and rates of pay "bear on the amount Plaintiff could have earned with reasonable diligence."); *Broome v. Int'l Cruise & Excursions Gallery, Inc.*, No. 18CV4598, 2019 WL 13144879, *3 (E.D.N.Y. Nov. 21, 2019) (granting discovery concerning plaintiff's wages and benefits for period following his allegedly unlawful termination but rejecting request for documents for period preceding his employment with defendant as "clearly irrelevant to an inquiry into plaintiff's efforts to mitigate damages subsequent to his termination from [defendant]."); *Rollins v Traylor Bros., Inc.*, No. C14-1414, 2017 WL 17556576, at * (W.D. Wash. May 5, 2017) ("To the extent that back-pay Plaintiffs asserts a lost wages claim, discovery for mitigation evidence is appropriate. However, only payroll or other records from employers subsequent to Plaintiffs' employment with Defendants is relevant."). As to five of the Employer Subpoenas, the records sought do not pertain to Plaintiffs' efforts to obtain employment *after* they were denied jobs at Walmart. The sole subpoena related to a time period following the failure-to-hire event giving rise to this action is directed to a company to which Johnson merely applied for employment but was not hired.[4]

---

[4] Apart from the lack of relevance of employment records pre-dating Walmart's failure to hire Plaintiffs, third-party discovery related to mitigation evidence after the event giving rise to this disparate impact action would appear to be

As to credibility, Walmart argues the discovery sought in the Employer Subpoenas will help to evaluate Plaintiffs' ability to serve as class representatives under Federal Rule of Civil Procedure 23(a). The argument is unavailing. Rule 26 requires discovery to be not only relevant but proportional to the needs of the case. Any connection between information presented by Plaintiffs to other employers and/or their third-party personnel records and Plaintiffs' satisfaction of the Rule 23(a) requirements of typicality and adequacy is attenuated at best, particularly in light of the nature of the employment discrimination claim at issue here. Contrary to Walmart's contention that Plaintiffs' past conduct towards other employers could bear on the question of whether its challenged employment actions were justified, the Title VII claim in this action is a disparate impact claim. It has nothing do with Plaintiffs' job-related conduct and/or misconduct. In other words, unlike a disparate treatment claim, the focus here is not on the legitimacy of the employer defendant's actions with regard to a particular plaintiff employee but rather on the business necessity of Walmart's facially neutral, but allegedly discriminatory, criminal background check policy. Without any indication, at a minimum, that the records are likely to contain information bearing on Plaintiffs' credibility with regard to the liability and/or class issues presented in this case, access to the third party employment files is not warranted. *See, e.g., Seawell v. Universal Fid. Corp.*, 235 F.R.D. 64, 66-67 (E.D. Pa. 2006) (rejecting argument that plaintiffs failed to meet Rule 23(a) adequacy requirement due to lack of credibility, reasoning that credibility did not bear on question of whether the challenged practice, an allegedly deceptive debt collection letter, was unlawful and, moreover, noting that no Third Circuit precedent indicated it was a consideration in determining whether a class representative's interests conflicted with those of putative class).

---

cumulative, as Plaintiffs assert they have already produced information concerning their employment history, including W-2 forms. *See* Reply at 4 (citing various discovery responses).

Additionally, the Employer Subpoenas must be quashed on the independent basis of overbreadth. Walmart's stated rationales for the discoverability of the subpoenaed documents and the issues relevant to this case fail to account for the expansive nature of the Employer Subpoenas. Each one of the six categories, on its own, asks for "all documents" related to various aspects of Plaintiffs' experience with the third-party employers, from inception of the hiring process to termination of employment. When examined individually, the requests' blanket nature and lack of close nexus to the issues in this case call into question the proportionality of the discovery demands under Rule 26(b). Taken together, the six categories of documents sought in the Employer Subpoenas amount to a request for the entirety of the employment files, from Plaintiffs' submission of a job application to the termination of employment. Such a request is plainly overbroad. *See, e.g., Gross*, 2021 U.S. Dist. LEXIS 177558, at *14-15 (quashing majority of defendants' subpoenas to plaintiff's other employers, noting that the individual requests, pieced together, "amount[ed] to an [impermissible] effort to obtain the entirety" of the employment file); *Saller v. QVC, Inc.*, 2016 WL 8716270, at *4 (E.D. Pa. June 24, 2016) ("Courts have routinely found blanket requests for a plaintiff's entire personnel or employment file to be impermissibly broad."); *Henry*, 2016 WL 303114, at *2 (finding subpoenas served on plaintiff's non-party, former employers in connection with plaintiff's employment discrimination action were improper blanket requests for "personnel files, disciplinary files, and any other employment documents or records" and concluding they must be quashed as "plainly overbroad").

Walmart must demonstrate the documents requested in the Employer Subpoenas relate to the claims and defenses at issue in this case. For the foregoing reasons, the Court finds it has not done so. However, even assuming the document requests bear some minimal relevance to

Plaintiffs' disparate impact claims, the Employer Subpoenas must nevertheless be quashed. Balancing the various factors applied by courts in this district when evaluating the reasonableness of third-party discovery, *see NovoNordisk Sec. Litig.,* 530 F. Supp. 3d at 501, this Court finds that the breadth of the requests and their lack of close nexus to the issues presented in this employment discrimination action far outweigh Walmart's articulated need for the documents.[5]

### III.   CONCLUSION AND ORDER

The Court concludes the Employer Subpoenas must be quashed as irrelevant, disproportionate to the needs of this case, and overbroad. Accordingly,

**IT IS** on this 2nd day of March 2023,

**ORDERED** that Plaintiffs' motion to quash the Employer Subpoenas, as identified above, [ECF 89] is **GRANTED**, pursuant to Rules 26(b), 26(c), and 45(d) of the Federal Rules of Civil Procedure.

                                              /s/ *André M. Espinosa*
                                              ANDRÉ M. ESPINOSA
                                              United States Magistrate Judge

---

[5] Moreover, although no concrete or identifiable harm to Plaintiffs resulting from the Employer Subpoenas has been presented on this motion, the Court approaches third-party discovery directed at employers that are not the focus of an employment discrimination claim with a measured level of caution, given the risk that such discovery could be used for an improper purpose, including the harassment or intimidation of a plaintiff attempting to enforce his or her rights under Title VII or a similar protective statute. *See, e.g., Vuona*, 2011 WL 5553709, at *9 (quashing subpoena because "any peripheral relevance the requested documents might conceivably have is decisively outweighed by the potential for harassment or reputational injury presented by a subpoena to such a former employer."); *EEOC v Princeton Healthcare Sys.*, No. 10-4126, 2012 WL 1623870, at *21-22 (D.N.J. May 9, 2012) (expressing concern, in an action for disability discrimination against an individual's employer, that wide-ranging discovery served on third-party employers could be used as a tool to delay proceedings or harass the plaintiff).