# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JACQUELINE RAMOS, et al., <br><br>           Plaintiffs, <br><br> v. <br><br> WALMART INC., <br><br>           Defendant. | Civil Action No.: 21-13827(BRM)(AME) <br><br><br> **SPECIAL MASTER <br> REPORT AND RECOMMENDATION** |

**WOLFSON, Special Master**:

In this putative class action, Plaintiffs Jacqueline Ramos and Edwin Johnson ("Plaintiffs" or "Named Plaintiffs") challenge Defendant Walmart Inc.'s ("Walmart" or "Defendant") criminal background check screen as discriminatory under Title VII of the Civil Rights Act, the New Jersey Law Against Discrimination ("NJLAD") and the Pennsylvania Criminal History Record Information Act ("CHRIA"). Plaintiffs filed the instant motion to amend[1] to substitute in two proposed plaintiffs, John Nole and Rahshan Paige ("Proposed Plaintiffs"), or in the alternative, Nole and Paige seek to intervene. The proposed pleading also narrows the membership of the Title VII and NJLAD disparate impact classes from Black and Latinx applicants to Black applicants alone. Because Plaintiffs do not otherwise seek to change any substantive counts of the operative complaint, the only issue before me is the appropriateness of the substitution of the

---

[1] Hon. Brian R. Martinotti, U.S.D.J., appointed me as the Special Master in this matter and referred the motion to amend for my report and recommendation.

Proposed Plaintiffs, or in alternative, their addition as intervenors. For the reasons set forth below, I recommend that Plaintiffs' motion to substitute named plaintiffs be granted.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    The Instant Lawsuit

On July 19, 2021, Plaintiff Ramos initiated this proposed class action under Title VII and the NJLAD on behalf of Black and Latinx individuals seeking employment. (ECF No. 1.) On September 23, 2021, before Walmart had entered an appearance, the original complaint was amended as of right—primarily to add Plaintiff Johnson[2] as a proposed Title VII and CHRIA class representative and to include additional information regarding Plaintiffs' administrative exhaustion. The SAC alleges that Walmart's overbroad criminal history screen for qualified applicants fails to account for evidence of rehabilitation or mitigation circumstances, and as a result, it disparately impacts Black and Latinx applicants, who historically are "significantly over arrested, convicted, and incarcerated in the United States." (SAC, ¶¶ 2-3.) In that regard, Plaintiffs claim that "denying employment to applicants with old and unrelated convictions is an unwarranted stigmatization and unreasonable restriction on the economic opportunities of such minority populations," (*id*. ¶ 3), in violation of Title VII, the NJLAD and CHRIA. (*Id*. ¶

---

[2]    In October 2021, Johnson filed a separate proposed class action in Pennsylvania state court, which claims, with Walmart's consent, were voluntarily dismissed from state court and joined with the claims in the instant putative class action. *See generally*, Second Amended Complaint ("SAC"). The SAC added the CHRIA allegations asserted in Johnson's state court complaint.

13.) Pursuant to these federal and state statutes, Plaintiffs bring class-wide claims that Walmart's criminal history screening policy disproportionately excludes Black and Latinx applicants who were otherwise qualified for employment. (*Id.* ¶ 12.)

## II.    Status of Discovery[3]

Since the inception of this case, the parties have engaged in extensive discovery. Due to numerous and substantial disputes, the Court appointed me in April 2023 as a discovery special master to resolve these disputes and efficiently advance this litigation. I have overseen the parties' discovery process since my appointment and am keenly aware of their disputes and the status of discovery.

Most of the fact discovery conducted thus far has focused on Walmart's hiring policies and criminal screening processes, applicable to any potential class member. Plaintiff Johnson's deposition was taken in March 2024; however, Plaintiff Ramos sought to withdraw from the suit one week prior to her scheduled deposition. Expert discovery has not yet commenced, and Rule 30(b)(6) depositions remain incomplete.[4]

Accordingly, although discovery has been halted due to the filing of the present motion, further fact discovery will be necessary. Indeed, according to Plaintiffs' counsel,

---

[3]    Walmart points out that discovery in this case has been extremely costly, primarily because of the many disputes between the parties. The essence of Walmart's argument is that permitting substitution would force it to incur additional expenses and undermine the time and effort already invested in discovery of Plaintiffs' original claims, thereby causing significant prejudice. Plaintiffs vehemently disagree with Walmart's characterization. I will address Walmart's prejudice argument under Rule 15(a), *infra*.

[4]    I note that from September 2023 until mid-January 2024, the parties unsuccessfully engaged in private mediation. During that time, the case was stayed by the Court.

should this case proceed, the parties anticipate several months will be required to complete remaining outstanding fact discovery in advance of expert discovery and Plaintiffs' anticipated motion for class certification.

## II.    Plaintiffs' Withdrawal

### A.    Ramos

Ramos declared that for "personal reasons," she decided to withdraw from this action on April 5, 2024. She further averred that she "can no longer serve as a class representative in this matter, and no longer wish[es] to participate in further individualized discovery." (Ramos Decl. ¶¶ 5-6.)

On April 9, 2024, approximately one week before Ramos's deposition, Plaintiffs' counsel informed defense counsel that Ramos was withdrawing from suit. The next day, Walmart sought my permission to cancel the scheduled in-person Rule 30(b)(6) deposition, which I granted. I directed Plaintiffs to provide Walmart with a proposed amended complaint and for Walmart to respond with its position to those amendments. On April 25, 2024, Plaintiffs identified proposed Plaintiff Nole to substitute for Ramos as a named plaintiff.

### B.    Johnson

On May 21, 2024, Johnson stated that for "personal reasons," he also had made the decision to withdraw from this action. (Johnson Decl. ¶ 6.) Like Ramos, Johnson

expressed that he "can no longer serve as a class representative . . . and no longer wish[es] to participate in further individualized discovery." (*Id.* ¶ 7.)[5]

On the same day, Plaintiffs' counsel notified Walmart that Johnson was withdrawing. During a May 24, 2024 status conference, Plaintiffs indicated their intent to file an amended complaint removing both Ramos and Johnson as named Plaintiffs and substituting Nole and Paige.[6]

## III.    Proposed Third Amended Complaint

In their Proposed Third Amended Complaint ("TAC"), Plaintiffs do not seek to add additional claims. Rather, they seek to substitute Proposed Plaintiffs Nole and Paige as named plaintiffs and putative class representatives, and to narrow the scope of the case by limiting the proposed class members under Title VII, the NJLAD and CHRIA to solely black applicants, removing Latinx applicants.

---

[5]    Defendant sought to take fact discovery into the reasons why both Ramos and Johnson withdrew for the purposes of opposing the current motion to amend. I disallowed such discovery to proceed, and on September 24, 2024, the Court affirmed my decision in that regard ("Affirmance Order"). However, in its briefing, Defendant continues to question the underlying reasons for these plaintiffs' withdrawal. As I have explained, because such reasons are not relevant in assessing the Rule 16 or Rule 15 factors for amendment in this motion, I decline to further discuss them in this Report and Recommendation. I will, however, discuss Defendant's timeliness argument, *infra*, relating to counsel's knowledge.

[6]    Notably, Ramos and Johnson will remain as absent class members should the class be certified.

### A.     Nole

In and around late 2023, Nole, a black male, applied to Walmart online for a janitorial position at its Norristown, Pennsylvania location. (TAC ¶¶ 40-41.) While Walmart initially provided Nole an offer of employment in November 2023, Walmart allegedly revoked its offer based on Nole's criminal convictions, which Plaintiffs claim were more than 52 years old and all stem from a single arrest. [7] (*Id.* ¶¶ 26, 41, 49.) According to Nole, "Walmart denied [him] employment despite the 50+ years that have passed since a criminal offense that occurred when he was a juvenile and strong evidence of subsequent rehabilitation in the form of extensive volunteer experience and meaningful contributions to the innate reentry community. (*Id.* ¶ 50.) Notwithstanding these mitigation factors, Plaintiffs allege that Walmart nonetheless considered decades old convictions that are not relevant to the position for which Nole applied. (*See id.* ¶ 54.) Nole is seeking to represent the Title VII and CHIRA putative class members.

### B.     Paige

In July 2022, Paige, also a black male, applied for an entry-level associate position at Walmart. (*Id.* ¶ 55.) Walmart initially offered Paige employment in its Linden, New Jersey store, however, it revoked the offer in August 2022 based on his background check.

---

[7]     In its brief, Defendant submitted Declarations from Norma Orellana and Jennifer Muro, both of which included additional facts about the circumstances of Nole's and Paige's hiring and their application processes that do not appear in the TAC. I cannot consider those extraneous facts at this juncture. As I will further explain *infra*, while Defendant correctly notes that I can look beyond the four corners of the TAC when assessing delay, prejudice or good faith on a motion to amend, I am not permitted to consider facts outside of the complaint that go to the merits of Plaintiffs' claims on this motion.

(*Id.* ¶¶ 56, 60-61.) Paige claims that his convictions were more than 8 years old, but despite the staleness of his convictions, Walmart rejected his application and the company failed to consider his "strong evidence of subsequent rehabilitation in the form of relevant job experience between the end of his incarceration and his application to Walmart." (*Id.* ¶¶ 61-62.) Claiming that the denial of employment violates state and federal laws, Paige is seeking to represent the Title VII and NJLAD putative class members on the basis of disparate impact.

## DISCUSSION

### I.    Rule 16

Federal Rules of Civil Procedure Rule 16 directs district courts to enter pretrial orders, including setting deadlines for completing discovery, amending pleadings, and joining parties. *See* Fed. R. Civ. P. 16(b). Specifically, Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Accordingly, the good cause standard applies once the deadline, including amending pleadings, in a scheduling order expires. In short, a motion to amend filed after the scheduling deadline requires the moving party to demonstrate good cause. *See MSP Recovery Claims v. Sanofi-Aventis U.S. LLC*, No. 18-2211, 2024 U.S. Dist. LEXIS 26240, at *12 (D.N.J. Jan. 25, 2024).

As an initial matter, the parties dispute whether Rule 16 applies to Plaintiffs' motion to amend. On one hand, Defendant highlights that the initial February 7, 2022 scheduling order in this case set the deadline to amend the complaint for July 27, 2022 (30 days prior to the original end date for fact discovery), and that particular deadline has

not changed even though the close of fact discovery has been extended three times. Defendant, thus, argues because Plaintiffs' time to amend has long expired, they must meet the good cause standard under Rule 16.[8] Plaintiffs, on the other hand, contend that the deadline to amend should not be applied because the original discovery deadline has been extended multiple times, and that consistent with the expectations of the original schedule, Plaintiffs have sought amendment more than 30 days before the close of fact discovery.

The threshold question is whether Rule 16 applies when the deadline to amend has lapsed and fact discovery has not concluded. This issue arises in cases more often than not during the course of discovery. I have reviewed case law in this context, and the decisions do not provide any clear guidance as the resolution of the dispute is often fact dependent. Unsurprisingly, decisions have gone both ways. On one end of the spectrum, courts have been reluctant to forgo applying Rule 16 when a deadline to amend has long expired. *See McGrath v. Rainbow Pediatrics, P.C.*, No. 19-4714, 2021 U.S. Dist. LEXIS 153678,

---

[8]    Defendant also argues that the Court has resolved this issue by finding in its Affirmance Order that Plaintiffs must demonstrate good cause in their motion to amend. However, the Court did not make such a ruling. The purpose of Defendant's prior appeal was to review my decision denying its request for discovery regarding the reasons Ramos and Johnon withdrew under both Rule 16 and Rule 15. In my decision, I explicitly explained that I was "not making any determination as to whether good cause exists (if Rule 16 applies) or whether there is any undue delay." Opinion dated July 3, 2024, 6 n.3. The Court "echo[ed]" my "emphasis in footnote 3," and made clear that its decision is confined to "the narrow issue regarding the relevance of Defendant's additional discovery request to a Rule 16 analysis." Affirmance Order, 9 n.3. Indeed, the Court further noted that the determination of the applicability of Rule 16 will be made "by Judge Wolfson on the motion to amend." *Id.* In short, neither I nor the Court found that Rule 16 definitively applies. That decision, as I have explained, shall be made in this Report and Recommendation.

at *6 (D.N.J. Aug. 16, 2021) (finding that while "several scheduling orders were entered . . . extending deadlines relating to pretrial discovery and dispositive motions[,]" at no point was "an extension given for the time to seek amendments," and "because leave to amend is being sought beyond the [amendment] deadline, plaintiff must surmount both Rule 16(b)(4) and Rule 15(a)(2)"); *Strategic Prods. & Servs., LLC v. Integrated Media Techs., Inc.*, No. 18-694, 2020 U.S. Dist. LEXIS 180316, at *5 (D.N.J. Sept. 30, 2020).

On the other end, courts have explained that when the scheduling order has been repeatedly extended with involvement and consent by both parties, it would be inappropriate to hold them to the original scheduling order. *See In re L'Oreal Wrinkle Cream Mktg. Practices Litig.*, No. 12-3571, 2015 U.S. Dist. LEXIS 132997 at *9 (D.N.J. Sept. 30, 2015) (explaining that "it makes zero sense to hold Plaintiffs to an amendment deadline of December 2014" when numerous extensions have extended discovery well into 2016); *Batta v. HCL Am., Inc.*, No. 17-5988, 2019 U.S. Dist. LEXIS 217483 at *4 (D.N.J Dec. 17, 2019) ("While the Court acknowledges that it did not explicitly extend the deadline for Plaintiff to file a motion to amend, it would be unreasonable to hold Plaintiff to the initial May 25, 2018 deadline to amend when fact discovery has been on-going in this matter and typically a motion to amend pleadings is near the close of fact discovery.").

I, as a special master, recently dealt with this issue in *L&M Healthcare Commc'ns LLC v. Pantano*, No. 22-481, 2023 U.S. Dist. LEXIS 235288 (D.N.J. Dec. 29, 2023). Although the posture of that case ultimately did not require me to resolve the issue, I noted that courts have differing views depending on the surrounding circumstances. Distilling

those views, the key factors for determining whether the good cause standard should apply once the deadline for amending the pleadings has passed are fairness, equity, and the expectations of the parties. *Id.* at *11 ("During the ordinary course of many cases, the parties may focus on amending discovery end dates rather than other deadlines imposed by scheduling orders, and as a result, so long as discovery is not [at] an end, based on the procedural posture of the case, a court may exercise discretion to adjust already-lapsed deadlines *nunc pro tunc*. But, in doing so, the court must balance the equities.").

Here, after considering the surrounding facts, I find that Rule 16's good cause requirement need not apply for the reasons that follow, and yet, these same reasons underscore why good cause exists, which I further discuss *infra*. First, due to numerous discovery disputes—some often contentious—and the parties having engaged in private mediation, which stayed the case for a period of approximately 4 months, the progress of this case has been substantially delayed. As a result, there will clearly be additional fact discovery to be taken—even without accounting for the specific discovery of the Proposed Plaintiffs. Thus, it would be inequitable to hold Plaintiffs to the original deadline when the conclusion of fact discovery is still remote. Indeed, it was based on events that occurred *after* the deadline had expired—the decisions of Named Plaintiffs to withdraw—that necessitated the proposed amendments. *See EBIN N.Y., Inc. v. Young Chul Lee*, No. 17-13509, 2019 U.S. Dist. LEXIS 178298, at *6 (D.N.J. Oct. 11, 2019) (declining to apply Rule 16 in the context of a motion to amend when discovery end date was amended several times and only written discovery had taken place); *Marinac v. Mondelez Int'l, Inc.*, No. 14-7606, 2019 U.S. Dist. LEXIS 13890, at *5-6 (D.N.J. Jan. 29, 2019) (same).

Second, at this time, it cannot be seriously argued that the parties expected to adhere to the dates set forth in the original scheduling order, since both parties consented to multiple extensions of fact discovery. For instance, while the dates for serving interrogatories or requests for production of documents (which were set for February 11, 2022 in the initial scheduling order) have passed, the parties have continued to propound discovery requests. I know firsthand that should this case proceed, discovery is far from over; class discovery remains incomplete, and if a class is certified, additional merits discovery would take place. Hence, as a matter of fairness, the deadlines must be adjusted to account for the realities of litigation. Even as a matter of practice, "it has always been the [c]ourt's contemplation that, as in nearly every case, the deadline for the amendment of pleadings should be near the close of fact discovery." *High 5 Games, LLC v. Marks*, No. 13-7161, 2017 U.S. Dist. LEXIS 9302, at *7 (D.N.J. Jan. 24, 2017).

Accordingly, the deadlines set forth in the initial scheduling order are no longer the operative dates to which the parties have been adhering. "It would be illogical to hold Plaintiffs to an amendment deadline date in a scheduling order that long ago went stale," especially since the discovery dates will be extended again after the resolution of this motion. *In re L'Oreal*, 2015 U.S. Dist. LEXIS 132997, at *9. Thus, on these facts, while Plaintiffs need not show good cause to amend, as discussed below, I also find that good cause exists.[9] Furthermore, they still must satisfy Rule 15(a), including that no undue delay occurred.

---

[9]    I will further discuss Defendant's diligence arguments in the next section.

## II.    Rule 15(a)

### A.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 15, once the time to amend as of right has expired, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Courts are to "freely give leave when justice so requires." *Id.* As such, Rule 15 encourages and provides for a liberal policy for amending pleadings. *Gordon v. Dailey*, No. 14-7495, 2017 U.S. Dist. LEXIS 47281, at *2 (D.N.J. Mar. 30, 2017). In *Foman v. Davis*, the Supreme court articulated such a policy underlying Rule 15(a), as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or undeclared reasons—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

371 U.S. 178, 182 (1962).

Based on the Supreme Court's pronouncement in *Foman*, the Third Circuit has advised that "[t]here are three instances when a court typically may exercise its discretion to deny a Rule 15(a) motion for leave to amend: when '(1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party.'" *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 249 (3d Cir. 2016). "Generally, there is a presumption in allowing the moving party to amend its pleadings."

*Donovan v. W.R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021). The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.*, 401 U.S. 321, 330 (1970).

I will address each of these factors, below.

### 1.    Undue Delay

Undue delay focuses on whether the party seeking leave has inexplicably failed to take advantage of previous opportunities to amend, resulting in unfair burdens to the court and the opposing party. *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2005). "The mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay." *Cureton v. Nat'l Collegiate Ath. Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001). In other words, delay becomes undue "when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton*, 252 F.3d at 273). In making this determination, the court "focus[es] on the movant's reasons for not amending sooner," *Cureton*, 252 F.3d at 273, and balances "these reasons against the burden of delay on the District Court." *Bjorgung*, 550 F.3d at 266 (citing *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988)); *Le v. City of Wilmington*, No. 08-615, 2010 U.S. Dist. LEXIS 69038, at *6 (D. Del. July 12, 2010) ("In evaluating whether a party's delay is undue, the Court must focus on the movant's reasons for not amending its pleading earlier."). In that regard, the Third Circuit places importance on a movant articulating a

"colorable excuse" for the delay. *See Arthur*, 434 F.3d at 205 n.11 (citing *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984) (internal quotation marks omitted)).[10]

Here, the thrust of Defendant's arguments on timing and delay are advanced under Rule 16's good cause standard, which admittedly is more stringent than Rule 15(a)'s undue delay analysis. *See Premier Comp Sols. v. UPMC*, 970 F.3d 316, 319 (3d Cir. 2020) (finding that a "party must meet [Rule 16(b)'s] standard before a district court considers whether the party also meets Rule 15(a)'s more liberal standard"). Tellingly, Defendant relies solely on its argument of lack of good cause to demonstrate undue delay.

Applying the more liberal standard of Rule 15(a), I cannot find that Plaintiffs unduly delayed in filing their motion to amend. The "undue delay" standard requires that I focus on whether Plaintiffs had the opportunity to amend earlier but failed to do so. Based on the record before me, Plaintiffs' counsel filed the motion very shortly after they became aware that both Johnson and Ramos sought to withdraw from suit for

---

[10]     Defendant cites *Barney v. Nova Lifestyle, Inc.*, 2022 U.S. Dist. LEXIS 155604, at *4-5 (C.D. Cal. Aug. 29, 2022), for the proposition that pre-certification substitution of the named plaintiff is a back-door attempt to begin the action anew. But, that principle only applies when the named plaintiff's claims are dismissed. *Id.* As that decision makes clear, "pre-certification substitution of the named plaintiff has been allowed when the named plaintiff's claims remain pending and viable, the request to withdraw is for personal reasons, the original named plaintiff intends to remain a class member, and there is an adequate proposed substitute named plaintiff available." *Id.* at *5. The latter scenario is present in this case. And, district courts in the Third Circuit are in accord. *See Castillo v. United Rentals (N. Am.), Inc.*, No. 17-1573, 2018 U.S. Dist. LEXIS 118454, at *8 (W.D. Pa. July 16, 2018) (permitting the named plaintiff to withdraw based on personal reasons); *Wilson v. Quest Diagnostics Inc.*, No. 18-11960, 2020 U.S. Dist. LEXIS 13190, at *8-9 (D.N.J. Jan. 24, 2020) (same); *Ceisler v. First Pa. Corp.*, No. 89-9234, 1991 U.S. Dist. LEXIS 6526, at *11-12 (E.D. Pa. May 13, 1991); *see also Nedrick v. Cnty. of Salem*, No. 22-5143, 2024 U.S. Dist. LEXIS 45042, at *11-12 (D.N.J. Mar. 13, 2024).

personal reasons. As recited above, Ramos advised her counsel that she wished to withdraw from this case on April 5, 2024, and counsel informed Walmart of the same on April 9, 2024. (McNerney Supplemental Declaration ("McNerney Supp. Decl.") ¶¶ 6, 8.) Later that month, Plaintiffs' counsel also informed Walmart that they seek to substitute Ramos with Nole. (McNerney Declaration ("McNerney Decl.") ¶ 26.) At that time, Walmart indicated that with certain conditions, it would not oppose Plaintiffs' proposed amendment. (*See* Walmart May 17, 2024 Letter.)

The next month, the parties haggled over certain unemployment insurance discovery concerning Johnson, and on May 17, 2024, Defendant submitted a joint letter to me raising the dispute. During a conference call scheduled to discuss this discovery dispute, I granted Plaintiff an adjournment. Then, on May 21, 2024, Johnson determined that he would withdraw as a named plaintiff, and on the same day, his counsel informed Walmart of this decision. (McNerney Supp. Decl. ¶¶ 9, 11.) On May 24, 2024, I convened another status conference during which Plaintiffs indicated their intent to file an amended complaint removing both Ramos and Johnson as named plaintiffs and substituting Paige, who apparently retained Plaintiffs' counsel a day prior, as well as Nole. Questioning the bases for both withdrawals, Defendant indicated that it would oppose amendment. Plaintiffs promptly filed this motion on June 7, 2024, pursuant to the briefing schedule I set.

According to Plaintiffs' counsel, they had no prior knowledge that either Ramos or Johnson would withdraw as named plaintiffs for personal reasons. Rather, counsel became aware of Named Plaintiffs' decisions only after both plaintiffs advised them on

15

the dates set forth in counsel's declaration. (*See* McNerney Supp. Decl. ¶¶ 7, 10.) Taking Named Plaintiffs and their counsel's sworn Declarations at face value regarding the timing of Plaintiffs' decisions to withdraw and then so notifying their counsel, under the totality of the facts, I cannot find that Plaintiffs could have amended any sooner. Rather, counsel expeditiously sought substitution when they became aware of Named Plaintiffs' decisions to withdraw. Importantly, because the TAC does not assert additional claims or seek to amend the current claims (except for dismissing the Latinx class), I need not determine whether any *claims* could have been amended sooner; my focus is only the timing of the substitutions. And, on that issue, I find Named Plaintiffs have not delayed their requests.

While my determination is sufficient under Rule 15, I will, for completeness, also address Defendant's diligence arguments that it made under Rule 16. Despite the declarations submitted, Defendant vehemently disputes Plaintiffs' diligence, contending that neither Walmart nor the Court can ascertain whether Plaintiffs themselves acted diligently in seeking amendment, or whether Plaintiffs' counsel could have uncovered additional facts regarding Named Plaintiffs' decisions to withdraw. According to Defendant, the vague information provided in the declarations strongly suggests that Plaintiffs could have sought substitution earlier, and that their unexplained delay severely prejudiced Defendant. I am not persuaded by these arguments.

First and foremost, I previously found—and Judge Martinotti affirmed—that the reason for Named Plaintiffs' withdrawal is not relevant to my assessment of this motion. Nonetheless, Defendant continues to question Plaintiffs' decisions, speculating for

example, that Johnson's withdrawal might stem from potentially unfavorable information that would have surfaced had Walmart been able to compel Johnson to produce disputed unemployment insurance or employment records. In that context, Defendant further insists that Plaintiffs' counsel, with proper investigation, should have discovered any such information and sought substitution much earlier.[11]

I note that the production of Johnson's unemployment insurance and employment records was disputed prior to his withdrawal, and both parties debated the legal relevance of those records. Even if that dispute somehow motivated Johnson to withdraw, I have no basis to question his counsel's representation that counsel could not have anticipated Johnson's withdrawal earlier. Put differently, because Johnson's withdrawal was personal rather than related to any defects in Plaintiffs' claims, it is reasonable to conclude that his counsel would not have known Johnson's reasons for withdrawing any sooner.[12]

---

[11]    Again, Defendant argues that Plaintiffs and their counsel have failed to provide evidence concerning the central question raised by Judge Martinotti in his Affirmance Order; that is, under Rule 16, did Plaintiffs' counsel know or should they have known of the facts giving rise to the proposed amendment prior to the amendment deadline. Even under Defendant's speculation that other facts underlie Plaintiffs' decisions to withdraw of which counsel should have been aware, nothing suggests that such "knowledge" or suspicion was held by counsel prior to April or May 2024, and certainly not prior to the deadline for amendment in 2022.

[12]    While Defendant takes issue with the statements made in counsel's sworn Declaration, counsel is an officer of the Court, and I therefore accept counsel's representations at face value absent any evidence of fraud on the Court.

Regarding Ramos, Defendant argues that because neither of the newly proposed plaintiffs are Latinx, it suggests that Plaintiffs' counsel determined that the Latinx class claim was not viable and advised Ramos to withdraw. Defendant contends that counsel should have recognized this sooner in the litigation. However, there has been no such concession by Plaintiffs' counsel. Furthermore, Ramos also represented a Black class, not just Latinx, and whether the Latinx class could have been dismissed earlier is not relevant to this motion to amend; I am focused solely on whether the substitutions could have occurred at an earlier time.[13]

Finally, I address Defendant's insistence that Plaintiffs' unspecified "personal reasons" do not suffice to show diligence. Citing *Hitt v. Arizona Beverage Co.*, 2009 WL 4261192 (S.D. Cal. Nov. 24, 2009), Defendant argues that personal reasons alone do not meet Plaintiffs' burden. But, not only did Judge Martinotti and I already reject that

---

[13] Defendant cites to *Morel v. GOYA Foods, Inc.*, No. 20-05551, 2022 U.S. Dist. LEXIS 146189 (D.N.J. Aug. 16, 2022) and *MSP Recovery Claims v. Sanofi-Aventis U.S. LLC*, No. 18-2211, 2024 U.S. Dist. LEXIS 26240 (D.N.J. Jan. 25, 2024), for the proposition that Plaintiffs' counsel lacked diligence when they could have uncovered any issues with Named Plaintiffs' capacity to serve as class representatives. These cases are distinguishable for two reasons. First, the cases address the good cause standard under Rule 16, which is not directly applicable here for the reasons already stated. Second, and more importantly, the facts of the cases are not comparable. In *Morel*, the court dealt with potential adequacy issues as to the putative class representatives, whereas here, Named Plaintiffs are seeking to withdraw based on personal reasons. In *MSP Recovery*, the plaintiffs sought to change the theory of the case long after the deadline to amend had passed. Indeed, in both cases, the court explained that good cause is lacking when the moving party is found to have had available knowledge (actual or constructive) to justify a motion to amend a pleading but failed to act on that information in a timely fashion. *Id.* at *31. Here, as I explained *supra*, Plaintiffs are neither amending allegations with regard to the substantive claims nor has counsel represented that they could have known any earlier that Plaintiffs were withdrawing based on personal issues.

argument, we distinguished *Hitt*. I explained that in *Hitt*, rather than focusing on plaintiff's underlying reasons for withdrawing, the court, pursuant to Rule 16, found that the motion to amend did not indicate *when* plaintiff decided she did not want to be the class representative or *when* the personal reasons arose. *Ramos v. Walmart Inc.*, No. 21-13827, 2024 U.S. Dist. LEXIS 126691, at *7 (D.N.J. July 3, 2024).

Notwithstanding this ruling, Defendant maintains that unspecified personal reasons would countenance "plaintiffs' counsel to file a lawsuit without doing due diligence on their class representatives, proceed through discovery, and at any point they discover the plaintiff's inadequacy, claim 'personal reasons' for [withdrawal], and amend to swap out another plaintiff." (Def. Opp. Br., 16.) I disagree. First, to make such an argument, Defendant presupposes that all the Declarations submitted by Named Plaintiffs and their counsel contain fabrications and misrepresentations. None of the surrounding circumstances in this case have led me to question the veracity of the Declarations. Next, I reiterate that to mount a proper argument in this context, Defendant need not focus on the underlying reasons for the withdrawal, but rather, *when* counsel could have known that Plaintiffs decided to withdraw. Here, counsel indicated that they became aware at the time Plaintiffs made their decisions, *i.e.*, April 2, 2024 and May 21, 2024.

I am also persuaded that permitting Plaintiffs to amend will promote judicial economy. After years of class and some merits discovery, this Court has developed a deep familiarity with the case. Moreover, discovery does not merely involve Named Plaintiffs; rather, the parties' disputes center primarily on document production related to

Walmart's practices, which underlie putative class members' claims, including Proposed Plaintiffs. If the Proposed Plaintiffs were compelled to file a separate new case, it would waste this Court's resources and consume another district court's time and resources. Such a result would be contrary to the efficiency promoted by Rule 15. *See Wilson*, 2020 U.S. Dist. LEXIS 13190, at *8-9 ("After dedicating substantial judicial resources to this case (effectively denying two attempts at dismissal and an attempt to stay), it would be inefficient to force a second case to be filed, especially in light of the seemingly universal allowance of substitution of lead plaintiffs due to genuine issues."); *Gaddy v. Long & Foster Co.*, No. 21-2396, 2023 U.S. Dist. LEXIS 22935, at *16 (D.N.J. Feb. 10, 2023).

### 2.    Prejudice

As to the prejudice prong, I do not find that Defendant would be unfairly prejudiced. Delay alone does not justify denying a motion to amend. *See Cureton*, 252 F.3d at 273. Rather, it is only where delay becomes prejudicial, which places "an unfair burden on the opposing party" that denial of a motion to amend is appropriate. *Adams*, 739 F.2d at 868. Accordingly, in deciding whether to grant leave to amend, "'prejudice to the non-moving party is the touchstone for the denial of the amendment.'" *Bechtel v. Robinson*, 886 F.2d 644, 652 (3d Cir. 1989) (quoting *Cornell & Co., Inc. v. Occupational Health and Safety Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978)).

To establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another

jurisdiction. *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004). Indeed, when evaluating prejudice to the non-moving party, courts focus on whether amendment would impair the non-moving party's "ability to present its case," *Dente v. Saxon Mortg.*, No. 11-6933, 2012 U.S. Dist. LEXIS 66588, at *5 (D.N.J. May 11, 2012) (citing *Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of the V.I., Inc.*, 663 F.2d 419, 426 (3d Cir. 1981)).

I begin with the most salient fact: Plaintiffs are not seeking to add any new claims; rather, they simply request the dismissal of the Latinx group from the operative complaint. Consequently, Defendant cannot claim undue prejudice when there are no new claims, substantive allegations, or expansions of the putative class. *Kiser v. Gen. Elec. Corp.*, 831 F.2d 423, 428 (3d Cir. 1987) (citing *Sanders v. Clemco Indus.*, 823 F.2d 214 (8th Cir. 1987)). Instead, Defendant will defend against the same claims and with one less putative class—the Latinx class.

Further, Defendant argues that it has unnecessarily incurred significant expenses for written discovery related to Named Plaintiffs, and that the nullification of prior discovery and the need for new discovery sufficiently demonstrate prejudice. I am not persuaded.

First, Defendant contends it has been prejudiced by wasting three years of time and resources litigating Named Plaintiffs' claims, particularly those involving the Latinx class, which is now being dismissed. Defendant maintains that these expenses, including expert fees, witness identification, and opinions, cannot be recovered. However, for purposes of this motion to amend, I do not find those costs prejudicial, because the proper inquiry is whether Defendant will incur *additional* expenses going forward. As Defendant

acknowledges, "[c]ourts specifically consider whether an amended pleading would result in additional discovery, cost, or preparation to defend against new facts or theories." (Def. Opp. Br. 22 (citing *Cureton*, 252 F.3d at 273) (emphasis added).) Moreover, any such additional costs must be excessive, which Defendant has not shown. (*Id.* (citing *Briscoe v. Klaus*, 538 F.3d 252, 259 (3d Cir. 2008).)

Even considering those expert costs, Plaintiffs correctly note, and I agree, that Defendant's expenditures necessarily involved reviewing all applicant data to evaluate the impact of Walmart's hiring practices, regardless of the protected class at issue. These evaluations remain useful to the case. More importantly, Defendant's efforts seemingly prompted Plaintiffs to voluntarily dismiss certain claims and narrow the class definition, which inures to Defendant's benefit. To the extent that narrowing the classes may nullify some prior discovery, I am not convinced that this alone constitutes prejudice,[14] because Plaintiffs' disparate impact claims remain unchanged and their central theory—that Walmart's criminal background check system has a disparate impact on Black applicants—has not shifted. Accordingly, I cannot find that Defendant's past expenses rise to the level of undue prejudice.

Lastly, Defendant claims prejudice by arguing that Nole and Paige would be inadequate class representatives. To support this position, Defendant submitted Declarations from Muro and Orellana—managers in Walmart's Associate Vetting Team. These Declarations contain facts outside the scope of the TAC and challenge the Proposed

---

[14]     Indeed, such arguments may be more appropriately raised in a fee application by a prevailing party—not on a motion to amend to narrow the claims.

Plaintiffs' hiring processes as alleged in the TAC. While Defendant introduces these facts to demonstrate prejudice, I cannot consider them at this juncture because (1) they go to the merits of Plaintiffs' claims on facts not pled,[15] and (2) they should be addressed by the District Court on a motion for class certification, when questions of adequate class representative is fully explored, rather than on a motion to amend.

For these reasons, I find that Defendant has not shown the type of prejudice necessary to defeat a motion to amend.

### 3.    Futility

Futility means the pleading, as amended, would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citation omitted). To determine whether a claim is futile, district courts apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). *See id.* (citation omitted); *Travelers Indemnity Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (citation omitted). I must accept as true all well-pleaded factual allegations asserted in Defendant's proposed amended pleading and determine whether the alleged facts support a facially plausible claim. *See Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011).

---

[15]    I need not go into the details of those contested facts, because on this Rule 15(a) motion, I cannot consider facts outside of the four corners of the TAC and the documents that it references. *See Brezinski v. Widener U.*, 582 F. Supp. 3d 257, 263-64 (E.D. Pa. 2022) (holding that district court could not consider factual material outside the complaint, exhibits attached thereto, and matters of public record); *see also Shane v. Fauver*, 213 F3d 113, 115 (3d Cir 2000) ("In assessing 'futility,' a district court applies the same standard of legal sufficiency that applies under Federal Rule of Civil Procedure 12(b)(6).").

Under Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted). Following the *Twombly/Iqbal* standard, the Third Circuit applies a two-part analysis in reviewing a pleading under Rule 12(b)(6). First, a district court must accept all of the pleading's well-pleaded facts as true, but may disregard any legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Second, a district court must determine whether the facts alleged in the pleading are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.*

a.    *Parties' Arguments*

In its Opposition Brief, Defendant contends that Plaintiffs' Title VII claims[16] are futile because neither Paige nor Nole filed an administrative charge of discrimination.[17]

---

[16]    I note that Defendant's futility argument does not extend to Plaintiffs' state law claims, because the dispute over administrative exhaustion and the Single Filing Rule relates exclusively to Title VII claims.

[17]    Because Defendant does not challenge on this motion the sufficiency of the substantive claims, I need not review those allegations.

It maintains that the Proposed Plaintiffs cannot invoke the Single Filing Rule (also known as "piggybacking") because they never filed their own EEOC[18] charges. In response, Plaintiffs argue that Defendant misperceives the piggybacking doctrine, and that to join this putative class action as named plaintiffs, Paige and Nole are entitled to rely on Johnson's and Ramos's previously filed charges, provided those charges alleged class-based discrimination.

Notwithstanding Plaintiffs' position, Nole filed his own EEOC charge on October 22, 2024. (Nole EEOC Charge 1.)[19] In his charge, Nole states that he seeks to bring "an individual and class-wide charge of discrimination against Walmart, Inc. . . . and piggyback on the charges previously brought by Edwin Johson . . . and Jacqueline Ramos . . ., which have a class period that begins on November 27, 2019." (*Id.* 2.) Nole further specifies that his charge "is representative and is intended to place Walmart on notice of class-wide allegations of race and color discrimination."[20] (*Id.* 3.)

---

[18]    EEOC stands for the United States Equal Employment Opportunity Commission.

[19]    While the TAC does not reference Nole's EEOC charge since it was submitted after the motion to amend was filed, I may still consider it at the motion to dismiss stage. *See Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("[W]e may consider the EEOC charge and related EEOC documents . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgement.").

[20]    In this connection, Walmart admits that Johnson's earlier filed EEOC charge put it on notice of a class-wide disparate impact allegation concerning the background check performed.

Following disclosure of Nole's newly filed charge, I permitted Defendant to submit a sur-reply. There, Defendant shifts its Single Filing Rule argument, asserting that a claimant who files his own individual charge cannot piggyback on another's EEOC filing. Based on this reasoning, Defendant contends that Nole's involvement in this lawsuit should be limited to his individual claim, and that the only class Nole could potentially represent would be restricted to those persons who have hiring claims occurring within 300 days before his October 22, 2024 charge—i.e., dating back to December 27, 2023. Defendant thus no longer claims that Nole's substitution would be entirely futile; rather, it argues that extending the class period back to 2019 would be impermissible. Defendant's sur-reply does not address Paige.

After oral argument on December 6, 2024, I directed the parties to submit supplemental briefing on *American Pipe*[21] tolling and relevant case law on the piggybacking rule. In their supplemental brief, Plaintiffs challenge much of the authority cited by Defendant (to be discussed *infra*), but more importantly, Plaintiffs contend that Defendant conflates the legal standards governing *American Pipe* tolling with those governing piggybacking. Defendant, for its part, argues that the equitable considerations underlying *American Pipe* weigh heavily against allowing substitution, as "endless tolling" of a class action would, in its view, unfairly prejudice Walmart.

---

[21]    *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

Admittedly, the parties' arguments implicate complex issues of tolling and the Single Filing Rule in a class-action context. To provide a clearer framework for analysis, I begin below with a recitation of the governing legal principles.

b.    *Single Filing Rule*

In order to bring a claim under Title VII, a plaintiff is required to submit a charge of discrimination with the EEOC, and provide notice of the charge to the defendant. 42 U.S.C. § 2000e-5(e)(1) ("A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter . . . ."). As an exception to this administrative exhaustion requirement, the judicially-created "Single Filing Rule" permits a "plaintiff who has not filed an EEOC charge within the requisite time period [to] join a class action without satisfying either requirements—exhaustion and filing—if the original EEOC charge filed by the plaintiff who subsequently filed a class action had alleged class based discrimination in the EEOC charge." *Communs. Workers of Am., Local 1033 v. N.J. Dep't of Pers.*, 282 F.3d 213, 217 (3d Cir. 2002) (citing *Lusardi v. Lechner*, 855 F.2d 1062, 1077-78 (3d Cir. 1988)); *Ruehl v. Viacom, Inc.*, 500 F.3d 375, 385 (3d Cir. 2007); *Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 506 (3d Cir. 1995) ("[The single filing rule] allows aggrieved individuals who failed to file the required . . . EEOC charge to join a class action brought by a plaintiff who had filed an EEOC charge alleging class-wide discrimination.").

There is a clear rationale that underlies the Single Filing Rule. An aggrieved employee is required to file an administrative charge in order to provide the charged party notice of the claims against it and to provide the EEOC the opportunity to "seek to eliminate any alleged unlawful practice by informal methods of conciliation, conference, and persuasion." 29 U.S.C. § 626(d). "Where the class-wide nature of the allegations is made clear in the class representative's administrative charge, the party charged and the administrative agency has notice of the claims and conciliation can be pursued." *In re Conrail A.D.A. Litig.*, No. 98-1669, 1999 U.S. Dist. LEXIS 21995, at *10 (W.D. Pa. Mar. 23, 1999). Accordingly, filing an EEOC charge that alleges class-wide discrimination essentially places "the EEOC and the party charged in the same position they would be in if all of the class members had filed individual charges." *Id.*

To invoke the Single Filing Rule, the putative plaintiff must first show that a timely charge with the EEOC was filed by a class representative that gave the employer notice regarding the alleged class-wide discrimination. *Evans v. Port Auth.*, No. 06-3239, 2007 U.S. Dist. LEXIS 77830, at *38 (D.N.J. Oct. 18, 2007) (citing *Whalen*, 56 F.3d at 506). Second, the plaintiff must also establish that the filed action is "on behalf of others similarly situated, or in other words is a class action." *Id.* (citing *Communs. Workers of Am.*, 282 F.3d at 217).

### c.    *Paige*

Here, because Nole's subsequent EEOC charge implicates both tolling and the Single Filing Rule, I will address his substitution in the next section. Turning to Paige, Defendant argues that Plaintiffs seek to expand the Single Filing Rule through his

28

substitution. Defendant vaguely asserts that under Plaintiffs' proposed amendment, only Nole and Paige would be subject to discovery, which—according to Defendant—renders its efforts to depose these Proposed Plaintiffs worthless, because they did not have viable claims at the time Johnson's charge was filed. I am not persuaded by Defendant's contention.

First, if the Proposed Plaintiffs are permitted to substitute, Defendant can take discovery from these individuals, including depositions, in connection with the claims they assert in the TAC. There is simply no requirement—and Defendant has cited no legal authority to the contrary—that, under the Single Filing Rule, the Proposed Plaintiffs' claims must have accrued at the same time Johnson's charge was filed. To be sure, some decisions instruct that a putative plaintiff who did not file an EEOC charge may only allege claims that accrued within the 300 days preceding the earliest-filed representative charge. *See, e.g., Rupert v. PPG Indus.*, No. 07-0705, 2009 U.S. Dist. LEXIS 131493, at *6–7 (W.D. Pa. Feb. 27, 2009). But my research has not revealed any rule or case requiring that Proposed Plaintiffs must have possessed viable claims at the time Johnson's or Ramos's charge was submitted.

Defendant's position essentially turns the Single Filing Rule on its head. Under that rule, as the Third Circuit has explained, a plaintiff such as Paige is excused from filing an EEOC charge if the original charge—filed by a plaintiff who subsequently brought a class action—alleges class-based discrimination. *See Communs. Workers of Am.*, 282 F.3d at 217. That is precisely the scenario here. Johnson's initial charge, filed on September 22, 2020, unquestionably alleged class-wide discrimination, and Johnson is a

named plaintiff in this putative class action. Consequently, Paige, who seeks to substitute as a named plaintiff and alleges similar discriminatory practices by Walmart, is entitled, under the Single Filing Rule, to "piggyback" on Johnson's previously filed charge and need not exhaust his administrative remedies. Simply put, Paige is excused from filing his own charge.

Defendant's policy arguments fare no better. It submits that the Single Filing Rule promotes two administrative purposes: notice to the employer and conciliatory opportunity. While Defendant does not contest notice, it contends that allowing Paige to piggyback off Johnson's charge undermines the Rule's conciliatory function. Yet that is precisely what the Rule allows: The Third Circuit adopted the Single Filing Rule in the context of class actions because "[w]here the class-wide nature of the allegations is made clear in the class representative's administrative charge, the party charged and the administrative agency have notice of the claims and conciliation can be pursued." *In re Conrail A.D.A. Litig.*, 1999 U.S. Dist. LEXIS 21995, at *10. Since Paige is part of the putative class, any measures Walmart takes in conciliation will necessarily affect him as well.

Finally, Defendant erroneously claims that because Paige was ultimately deemed eligible for employment—an extraneous fact not alleged in the TAC—he would have discovered his eligibility had he filed his own EEOC charge. Not only does Defendant seek to introduce facts outside the four corners of the TAC (which is not permitted at the futility stage), but the Single Filing Rule itself does not require Paige to file any charge before joining this class action. *Payne v. Consol Rail Corp.*, No. 99-2801, 2000 U.S. Dist. LEXIS 1488 (E.D. Pa. Feb. 10, 2000), on which Defendant relies, does not compel a

different conclusion. In *Payne*, which is not controlling decision here, the court declined to allow the plaintiff to piggyback off a decertified class. *Id.* at *11. There, it stated that the plaintiff needed to file a charge to afford the EEOC an opportunity to conciliate precisely because there was no extant class proceeding. *Id.* That situation does not apply here.

As Defendant raises no other objections specific to Paige, I conclude that the TAC is not futile as to him.[22]

### iii.    *Nole and American Pipe*

Defendant contends that because Nole filed an EEOC charge, he cannot piggyback onto the charges filed by Johnson or Ramos. Instead, according to Defendant, Nole is only qualified to represent a class dating back to December 27, 2023 (i.e., 300 days preceding his charge), rather than from 2019. Although Defendant relies on cases concerning the Single Filing Rule to support this argument, its position also implicates *American Pipe* tolling. The Single Filing Rule excuses a plaintiff from exhausting administrative remedies before joining a pending class action, but it does not address the scope of the class that a newly substituted plaintiff may represent. Now that Nole has filed his own EEOC charge, he is no longer seeking to piggyback on Johnson's earlier charge. Instead, he seeks to substitute for Johnson or Ramos and represent the class in its current form.

---

[22]    Any arguments challenging Paige's adequacy as a class representative based on his personal circumstances should be, and could be, raised at the class certification stage. This Report and Recommendation does not assess whether Paige satisfies Rule 23's adequacy requirement. Rather, my recommendation is solely that his request for substitution is not futile under the Single Filing Rule.

None of the cases that Defendant cites prohibit Nole from being the class representative in this context.

Defendant primarily relies on *Holowecki v. FedEx Corp.*, 440 F.3d 558 (2d Cir. 2006) and *Ruis v. Int'l Business Machines Corp.*, 529 F. Supp. 3d 178, 203 (S.D.N.Y. 2021). the analyses in these cases are not helpful or controlling under the facts here. First, in *Holowecki*, the Second Circuit allowed eleven plaintiffs who had not filed their own EEOC charges to "piggyback" onto a timely intake form and accompanying affidavit submitted by the named plaintiff, which the court deemed a proper charge for exhaustion purposes. *Id.* at 568–69. Accordingly, most of the analysis in *Holowecki* does not apply here. Instead, Defendant points to the portion of the decision addressing the claims of two individuals who had filed EEOC charges, but did not timely file their claims in court: "[a]n individual who has previously filed an EEOC charge cannot piggyback onto someone else's EEOC charge." *Id.* at 564. Relying on that principle, Defendant argues that because Nole filed an EEOC charge while this Motion was pending, he is now precluded from piggybacking onto Johnson's or Ramos's earlier-filed charges. However, after filing his own charge, Nole is no longer seeking to piggyback on either Johnson's or Ramos's charges to make his claims exhausted or timely. Instead, he stands in to represent the class as a substituted plaintiff.

The court in *Ruis* addressed similar circumstances. In that case, all four named plaintiffs filed individual charges of discrimination with the EEOC. *Ruis*, 202 F. Supp. 3d at 202. While the defendant, IBM, conceded that two named plaintiffs had filed timely EEOC charges that fully exhausted their ADEA claims, it argued that the charges filed by

the other two named plaintiffs ("Non-Exhausted Plaintiffs") were not fully exhausted. IBM contended, and the court agreed, that by filing their own charges, the two Non-Exhausted Plaintiffs could not piggyback onto the timely charges of the other two plaintiffs. *Id.* The Non-Exhausted Plaintiffs countered by arguing that the holding in *Holowecki* should be narrowly confined to its facts, asserting that the Second Circuit's primary concern in *Holowecki* was to prevent abuse of the piggybacking rule as a way to circumvent the consequences of failing to file a timely suit after receiving a right-to-sue letter. *Id.* at 203. The *Ruis* court rejected this argument, concluding that the Second Circuit's ruling in *Holowecki* was not so limited. *Id.* Moreover, the court appeared to endorse the principle that once a plaintiff files his or her own EEOC charge, that plaintiff may no longer piggyback on another's charge. This principle finds support in other circuits. *See, e.g.*, *Gitlitz v. Compagnie Nationale Air France*, 129 F.3d 554, 557–58 (11th Cir. 1997); *Anderson v. Unisys Corp.*, 47 F.3d 302, 308–09 (8th Cir. 1995); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1223–24 (5th Cir. 1995).

Although courts in the Third Circuit have not explicitly adopted the framework set forth in *Holowecki*, I need not determine its applicability in this case. As explained *supra*, since Nole has timely filed his own charge, he is no longer attempting to piggyback onto Named Plaintiffs' charges. Instead, the central issue is whether Nole's charge can encompass the temporal scope of the class claims of Named Plaintiffs. On this point, Plaintiffs contend that *American Pipe* and its progeny should govern and resolve the issue in their favor.

The U.S. Supreme Court in the seminal case of *American Pipe* held that the filing of a putative class action complaint tolls the applicable statute of limitations as to the individual claims of absent class members. *American Pipe*, 414 U.S. at 553-54. In that suit, just eleven days before the applicable statute of limitations was set to expire, the state of Utah filed a putative class action antitrust lawsuit on behalf of several public entities. The District Court ultimately denied class certification due to insufficient numerosity under Rule 23. Following this denial, several putative class members sought to intervene in the action. Despite the expiration of the statute of limitations, the district court permitted their intervention. The Supreme Court affirmed, stating that "[t]he commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 554. The Court emphasized that "[a] contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id.* at 553.

At first, the tolling rule established in *American Pipe* seemed to apply exclusively to class members who moved to intervene in a timely manner after class certification was denied. However, the Supreme Court expanded this principle in *Crown, Cork & Seal Co. v. Parker*, holding that tolling also extends to all members of the asserted class, including those who later filed individual lawsuits. 462 U.S. 345, 353-54 (1983). The Court reasoned that a different outcome would result in "a needless multiplicity of actions—precisely the

situation that Federal Rule of Civil Procedure 23 and the tolling rule of *American Pipe* were designed to avoid." *Id.* at 351.

Importantly, *American Pipe* tolls the statute of limitations during the pendency of a putative class action, allowing unnamed class members to join the action individually or to file individual claims if the class fails, but *American Pipe* has its limits. It "does not permit the maintenance of a follow-on class action past expiration of the statute of limitations." *China Agritech, Inc. v. Resh*, 584 U.S. 732, 735 (2018). In *China Agritech*, the Supreme Court held that American Pipe does not toll the claims of "a putative class representative . . . who brings his claims as a new class action after the statute of limitations has expired," reasoning that "the 'efficiency and economy of litigation' [rationales] that support tolling of individual claims . . . do not support maintenance of untimely successive class actions." *Id.* at 739 (quoting *American Pipe*, 414 U.S. at 553).

Here, I have carefully reviewed all the cases cited by the parties. The issue presented is relatively novel. Since the statute of limitations has not expired on Nole's claims,[23] he does not rely on *American Pipe* to preserve his timely claim. Rather, he invokes *American Pipe* as a basis to substitute as a named plaintiff, enabling him to represent the putative class in its currently defined time period. This class includes all nationwide Black Walmart applicants who were denied employment due to their criminal history,

---

[23]    In a separate Letter Order, I granted Nole's application to equitably toll, for 30 days, his 90-day right-to-sue period to join in this action or file a separate action pending my report and recommendation and any subsequent appeal. (*See* ECF No. 191.)

beginning 300 days prior to September 22, 2020 (the date Johnson and Ramos filed their EEOC charges), or November 27, 2019.

To begin, courts in this District have permitted substitutions of named plaintiffs in a class action, emphasizing that "[i]t is both efficient and expeditious to allow Plaintiff to substitute in new lead plaintiffs and proceed with the case, as opposed to extended motion practice under Rule 41, the filing of a new complaint, and the restarting of the case in full." *Wilson*, 2020 U.S. Dist. LEXIS 13190, at *8. Indeed, I share the *Wilson* court's practical view that "[a]fter dedicating substantial judicial resources to this case . . . it would be inefficient to force a second case to be filed, especially in light of the seemingly universal allowance of substitution of lead plaintiffs due to genuine issues." *Id.* *8-9; *see United States Parole Commission v. Geraghty*, 445 U.S. 388, 415-16 n.8, 479 (Powell, J., dissenting) (noting the court's authority under Rule 23 to seek substitute class representatives if a named plaintiff can no longer serve); Fed. R. Civ. P. 23(d)(1)(B)(iii) (providing that courts may issue notice inviting unnamed class members "to intervene and present claims or defense, or to otherwise come into the action"); Ann. Manual Complex Lit. § 21.26 (4th ed. 2023) (noting that, when substitution of a class representative is necessary "[t]he court may permit intervention . . . or may simply designate that person as a representative in the order granting class certification."); *see also* William B. Rubenstein, Newberg on Class Actions § 2:17 (5th ed. 2022) ("When mootness of the named plaintiff's claims occurs, intervention by absentee members is freely allowed in order to substitute them as class representatives."); *Shupe v. Rocket Cos.*,

No. 21-11528, 2024 U.S. Dist. LEXIS 19712, at 11 n.9 (E.D. Mich. Feb. 5, 2024); *In re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 283 (S.D. Ohio 1997).

Moreover, contrary to Defendant's position, the Supreme Court's *China Agritech* decision does not prohibit *American Pipe* tolling where a proposed plaintiff seeks to substitute in an ongoing class action. *See Schultz v. Midland Credit Mgmt.*, No. 16-4415, 2019 U.S. Dist. LEXIS 79889, at *32 (D.N.J. May 13, 2019); *Pelletier v. Endo Int'l PLC*, No. 17-5114, 2021 U.S. Dist. LEXIS 21207, at *33 (E.D. Pa. Feb. 4, 2021); *see also In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020) (seeing "no hint in the *China Agritech* opinion or its reasoning" that would "prohibit any addition or substitution of a new class representative within the original class action after the statute of limitations period would have run, but for *American Pipe* tolling"). In fact, "[s]ubstitution of a new named plaintiff to address the inadequacy of a class presentative [is] a routine feature of class actions [and] lies within the district court's discretion." *Pelletier*, 2021 U.S. Dist. LEXIS 21207, at *33 (quoting *In re Brewer*, 863 F.3d 861, 876 (D.C. Cir. 2017)); *see also Goodman v. Lukens Steel Co.*, 777 F.2d 113, 124 (3d Cir. 1985) (directing the district court to "explore the possibility of intervention by qualified class" representatives where proposed lead plaintiffs were inadequate). As the *Pelletier* court succinctly noted, substitution is a "legitimate substantive reason to permit a new [named] plaintiff where doing so is necessary to protect the interests of the putative class from a potentially inadequate [named] plaintiff." *Pelletier*, 2021 U.S. Dist. LEXIS 21207, at *34 (quotations omitted).

Having concluded that the substitution of a named plaintiff in a class action is permissible, my research reveals a dearth of case law addressing the temporal scope of a

class action when a substituted plaintiff assumes the role of the original named plaintiff. Defendant has cited no authority suggesting that a substituted plaintiff who has filed his own EEOC charge is barred from representing the putative class as originally defined in the initial complaint. But, I also disagree with Plaintiffs' contention that *American Pipe* necessarily resolves the scope issue. The dispute here does not concern whether Nole's claims were untimely and tolled under *American Pipe* to allow his substitution as a named plaintiff. Instead, the key question is whether Nole, whose claims are timely, can represent the class based on Named Plaintiffs' earlier EEOC charges.

Neither party has identified case law directly addressing this narrow and specific issue. After careful consideration, I find that the relation-back doctrine under Federal Rule of Civil Procedure 15(c)[24] may provide an appropriate framework to resolve this issue. However, because the parties have not yet had the opportunity to weigh in, I will defer making a recommendation on this point. Accordingly, the parties are directed to submit briefing on this specific issue before I render a decision.

---

[24]    Pursuant to Fed. R. Civ. P. 15(c)(1), "[a]n amendment to a pleading relates back to the date of the original pleading when . . . (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." In the context of *American Pipe* tolling, the Third Circuit has advised that when an amended complaint seeks to add an unnamed class member as a named plaintiff, it only needs to satisfy Rule 15(c)(1)(B) to relate back to an earlier complaint. *Drennan v. PNC Bank, NA*, 622 F.3d 275, 298 (3d Cir. 2010). Perhaps, the answer lies within *Drennan* and its line of cases.

That said, I do find that Nole can substitute as a named plaintiff[25]—a point Defendant has conceded. Accordingly, based on the foregoing reasons, I recommend granting Plaintiffs' request for substitution and approving Nole and Paige as replacements for Johnson and Ramos as the new named plaintiffs. I reserve judgment on whether Nole can represent the class temporally defined by Named Plaintiffs' EEOC charges.

Plaintiffs shall submit their briefing on this issue by February 13, 2025, and Defendant shall submit its response by February 27, 2025.

DATED: January 31, 2025                         /s/ Freda L. Wolfson
                                                Hon. Freda L. Wolfson (ret.)
                                                Special Master

---

[25]     Because I recommend that substitution is appropriate, I need not reach Plaintiffs' alternative argument concerning intervention under Fed. R. Civ. P. 24.