**OUTTEN & GOLDEN LLP**
Adam T. Klein*
Gregory Chiarello
Christopher M. McNerney*
Eliana J. Theodorou*
Jarron D. McAllister*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Email: atk@outtengolden.com
Email: gchiarello@outtengolden.com
Email: cmcnerney@outtengolden.com
Email: etheodorou@outtengolden.com
Email: jmcallister@outtengolden.com

*Admitted *pro hac vice*

*Attorneys for Plaintiffs and the Putative
Classes*

**OUTTEN & GOLDEN LLP**
Ossai Miazad*
Daniel S. Stromberg*
Pooja Shethji*
1225 New York Avenue NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 847-4400
Email: om@outtengolden.com
Email: dstromberg@outtengolden.com
Email: pshethji@outtengolden.com

**YOUTH REPRESENT**
Shomari Ward*
Simratpal Kaur*
11 Park Place, Suite 1512
New York, New York 10007
Telephone: (646) 759-8080
Email: sward@youthrepresent.org
Email: skaur@youthrepresent.org

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN NOLE, RAHSHAN PAIGE, and TIERRA EASON, individually and on behalf of all others similarly situated,<br><br>                      Plaintiffs,<br><br>    v.<br><br>WALMART INC.,<br><br>                      Defendant. | **Case No. 2:21-cv-13827-BRM-AME**<br><br>Judge Brian R. Martinotti<br>Magistrate Judge André M. Espinosa<br>Special Master Freda L. Wolfson<br><br>**REVISED THIRD AMENDED<br>CLASS ACTION COMPLAINT** |

Plaintiffs John Nole, Rahshan Paige, and Tierra Eason, individually and on behalf of all others similarly situated, allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

## **NATURE OF THE ACTION**

1.      Defendant Walmart Inc. ("Walmart") is the nation's largest private employer, with a ubiquitous presence throughout every corner of this nation.

2.      Each year, Walmart hires thousands of individuals across the country, but each year it also denies employment to many qualified applicants because of unrelated and/or stale criminal history, pursuant to an overbroad criminal history screen that fails to account for evidence of rehabilitation or mitigating circumstances.

3.      Walmart's criminal history policy must be understood in the context of the reality that: first, individuals who are Black are significantly over arrested, convicted, and incarcerated in the United States; and second, denying employment to applicants with old and unrelated convictions is an unwarranted stigmatization and unreasonable restriction on the economic opportunities of vulnerable populations.

4.      As the U.S. Commission on Civil Rights has found, "[w]hen the collateral consequences [of criminal convictions] are unrelated [either to the underlying crime for which a person has been convicted or to a public safety purpose], their imposition generally negatively affects public safety and the public good."[1]  Therefore, "[e]mployers should not automatically disqualify a candidate with a criminal record, except in circumstances when the criminal record

---

[1]      U.S. Commission on Civil Rights, *Collateral Consequences: The Crossroads of Punishment, Redemption, and the Effects on Communities* (June 2019), at 133, *available at* https://www.usccr.gov/pubs/2019/06-13-Collateral-Consequences.pdf.

*directly* conflicts with the scope of employment."[2]

5.      Plaintiffs are exemplars of such impacted individuals.

6.      At the time he applied for employment at Walmart, Plaintiff Nole, a Black man, had a prior criminal history that was unrelated to the employment for which he applied.  His most recent criminal conviction is more than 55 years old.

7.      Plaintiff Nole was qualified to work for Walmart.

8.      Walmart failed to account for the evidence of Mr. Nole's rehabilitation and mitigating circumstances in the form of his relevant experience, his efforts to contribute to the betterment of his community, and the time that had passed since his most recent criminal conviction.

9.      At the time he applied for employment at Walmart, Plaintiff Paige, a Black man, had a prior criminal history that was unrelated to the employment for which he applied.  His most recent criminal conviction is 12 years old.

10.     Plaintiff Paige was qualified to work for Walmart.

11.     Like with Plaintiff Nole, Walmart failed to account for the evidence of Mr. Paige's rehabilitation and mitigating circumstances in the form of his relevant experience and the time that had passed since his most recent criminal conviction.

12.     At the time she applied for employment at Walmart, Plaintiff Eason, a Black woman, had a prior criminal history that was unrelated to the employment for which she applied. Her most recent criminal conviction is nine years old.

13.     Plaintiff Eason was qualified to work for Walmart.

14.     Like Plaintiffs Nole and Paige, Walmart failed to account for the evidence of Ms.

---

[2]      *Id.* at 137 (emphasis added).

Eason's rehabilitation and mitigating circumstances in the form of her relevant experience – having previously worked at Walmart – and the time that had passed since her most recent criminal conviction.

15.    Plaintiffs' experiences are not isolated situations, but rather part of a broader pattern where Walmart employs an overbroad criminal history screen that fails to actually assess whether an applicant's convictions are job-related or create a business necessity for denial of employment – including by failing to account for evidence of rehabilitation or mitigating circumstances – resulting in (1) Walmart's disproportionate screening out of Black applicants, and (2) Walmart's denial of employment to many qualified applicants because of their criminal records, even where the applicant's conviction has no bearing on their suitability for the job.

16.    As a result of Walmart's actions, Plaintiffs bring individual and classwide claims alleging that Walmart's criminal history screening policy and practice perpetuates the gross racial disparities in the criminal justice system into its applicant pool, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 *et seq.*, and unfairly and unlawfully creates hurdles for individuals with criminal records seeking employment in Pennsylvania, in violation of Pennsylvania's Criminal History Record Information Act ("CHRIA"), 18 Pa.C.S. § 9125.

17.    Through this lawsuit, Plaintiffs Nole, Paige and Eason will show that the conduct outlined in this Complaint constitutes unlawful discrimination and clearly violates Title VII in text and spirit, which aims to remove any unjustified, discriminatory barriers to employment like Walmart's criminal history screen.

18.    Through this lawsuit, Plaintiff Paige will also show that the conduct outlined in

4

this Complaint constitutes unlawful discrimination and clearly violates the NJLAD in text and spirit, which aims to remove any unjustified, discriminatory barriers to employment like Walmart's criminal history screen.

19.     Through this lawsuit, Plaintiff Nole will also show that the conduct outlined in this Complaint violates the stated public policy of the Commonwealth of Pennsylvania to remove barriers to employment for persons who have paid the penalty for any crimes they may have committed.

20.     Plaintiffs seek monetary damages, and injunctive and declaratory relief on behalf of themselves and all other Walmart applicants similarly impacted nationwide, and also seek monetary damages, and injunctive and declaratory relief on behalf of all other Walmart applicants similarly impacted in New Jersey and Pennsylvania, as outlined further below.

**JURISDICTION AND VENUE**

21.     This Court has jurisdiction over Plaintiffs' Title VII claim pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).  This Court also has jurisdiction over Plaintiffs' NJLAD and CHRIA claims pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

22.     Plaintiff Paige's NJLAD disparate impact claim is so closely related to his Title VII disparate impact claim that they form part of the same case or controversy under Article III of the United States Constitution.  Through both claims, Plaintiff Paige challenges the same policy and practice of Walmart's.

23.     Likewise, Plaintiff Nole's CHRIA claim is so closely related to his Title VII disparate impact claim that they form part of the same case or controversy under Article III of the United States Constitution.  Through both claims, Plaintiff Nole challenges the same policy and practice of Walmart.

5

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C. § 2000e-5(f)(3) because a substantial part of the events and omissions giving rise to the claim alleged herein occurred in this District, and but for Walmart's actions, Plaintiff Paige would have worked in this District for Walmart.

25.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

26.     Former named plaintiff Jaqueline Ramos exhausted her administrative remedies and complied with all statutory prerequisites to her Title VII and NJLAD claims.  Former named plaintiff Ramos filed a timely charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or about September 22, 2020, alleging classwide violations.  Former named plaintiff Ramos received her Right to Sue letter dated April 20, 2021.

27.     Former named plaintiff Edwin Johnson exhausted his administrative remedies and complied with all statutory prerequisites to his Title VII claim.  Former named plaintiff Johnson dual-filed a timely charge of Discrimination with the EEOC and Pennsylvania Human Relations Commission on or about September 22, 2020, alleging classwide violations.  Former named plaintiff Johnson received his Right to Sue letter dated July 23, 2021.

## PARTIES

**Plaintiff Nole**

28.     Plaintiff Nole and the putative Class Members he seeks to represent are each "persons," "individuals," and/or "applicants for employment" within the meaning of Title VII and the CHRIA.

29.     Plaintiff Nole is currently a resident of Norristown, Pennsylvania.

30.     Plaintiff Nole had at the time of his application to Walmart for employment, and

continues to have, felony convictions, all of which stem from a single arrest that occurred 52 years prior to his application for employment with Walmart.

**Plaintiff Paige**

31.    Plaintiff Paige and the putative Class Members he seeks to represent are each "persons," "individuals," and/or "applicants for employment" within the meaning of Title VII and the NJLAD.

32.    Plaintiff Paige is currently a resident of Newark, New Jersey.

33.    Plaintiff Paige had at the time of his application to Walmart for employment, and continues to have, felony convictions, all of which occurred at least eight years prior to his application for employment with Walmart.

**Plaintiff Eason**

34.    Plaintiff Eason and the putative Class Members she seeks to represent are each "persons," "individuals," and/or "applicants for employment" within the meaning of Title VII.

35.    Plaintiff Eason is currently a resident of New Bern, North Carolina.

36.    Plaintiff Eason had at the time of her application to Walmart for employment, and continues to have, felony convictions.

**Defendant Walmart Inc. ("Walmart")**

37.    Walmart is the world's largest company by revenue, and a purveyor of all manner of goods through a robust online presence and brick and mortar locations worldwide.

38.    Walmart has approximately 10,526 locations in 24 countries, and approximately 5,342 locations in the United States.

39.    Walmart has locations in all 50 States, the District of Columbia, and Puerto Rico.

40.    Walmart has approximately 70 locations throughout New Jersey.

41. Walmart has approximately 160 retail stores and seven distribution centers in Pennsylvania.

42. Walmart employs approximately 2,300,000 employees worldwide and approximately 1,600,000 in the United States in a wide variety of jobs.

43. Walmart is the largest private employer in the United States.

44. Walmart is headquartered in Bentonville, Arkansas.

45. At all relevant times, Walmart has been an "employer," "person" and/or an "organization" as defined by Title VII, the NJLAD, and CHRIA.

46. At all relevant times, Walmart has been aware of the requirements of CHRIA and yet has disregarded those requirements.

## STATEMENT OF FACTS

**Plaintiff John Nole**

47. In or about late October or early November 2023, Mr. Nole applied online to work for Walmart in a janitorial role. The job did not require any specified level of education or expertise.

48. In November 2023, Mr. Nole successfully interviewed for the janitorial position for which he applied at a Walmart store located in Norristown, Pennsylvania. Walmart then provided Mr. Nole with an offer of employment, which he accepted.

49. After Mr. Nole accepted the offer of employment, he was required to consent to a background check that would be performed by First Advantage, and he completed the forms necessary to do so.

50. As part of the background check report, Mr. Nole self-disclosed the substance of his criminal history.

51.     Eager to start work, Mr. Nole called and visited the Norristown location to check on the status of his start date.  During his visit towards the end of November 2023, he spoke with a Walmart representative who told him that she would check on the status.

52.     In or about December 2023, prior to receiving a copy of his background check report, Mr. Nole also spoke with several individuals from First Advantage and/or Walmart about the status of his job application.  These individuals told Mr. Nole that his background check was in process.

53.     On or about December 29, 2023, Mr. Nole received a copy of his background check report, which did not list any additional criminal history other than what Mr. Nole self-disclosed.  This background check report listed a "score result" of "Decisional," and stated that it required further review by Walmart "to determine the consumer's eligibility based on background check results."

54.     First Advantage, on behalf of Walmart, also told Mr. Nole through a letter that he could submit additional information about his criminal history within five business days or otherwise Walmart would "make a final decision about your conditional job offer based on the findings in the attached report and/or self-reported information."

55.     On or about January 2, 2024, Mr. Nole responded by providing additional mitigating context about his criminal history, and information related to his subsequent employment history, education, volunteer work and rehabilitation efforts on the Statement of Individualized Assessment sent by First Advantage.

56.     In early January of 2024, Mr. Nole was notified that Walmart revoked his job offer.

9

57.     Walmart denied Mr. Nole employment despite the 50+ years that have passed since a criminal offense that occurred when he was a juvenile and strong evidence of subsequent rehabilitation in the form of extensive volunteer experience and meaningful contributions to the inmate reentry community.  For example, Mr. Nole disclosed that while incarcerated he "got [his] GED, took college courses, took computer literacy courses, took and facilitated classes in character development and responsibility decision making," and "took leadership roles in organizations."  He also disclosed that in the "five years since [he has] been out of prison, he "created a program to assist re-entrants from incarceration."

58.     The program Mr. Nole volunteers for is part of the Yokefellowship Prison Ministry ("YPM").  YPM received a 2023 Voices of Heroes Award from the City of Philadelphia for the reentry initiative conceived by Mr. Nole.

59.     In or around February or March 2024, Mr. Nole applied online to various Walmart stores by selecting "all stores" and "all job categories," in Walmart's online job application portal, to attempt to obtain employment.  He has not been hired by Walmart through this application process.

60.     In or around April 2024, Mr. Nole applied online to Walmart stores across the border in New Jersey in addition to Pennsylvania.  He has not been hired by Walmart to work at any of these stores.

61.     Mr. Nole's criminal history is not relevant to the positions for which he applied for reasons including the nature of the conviction, the age of the conviction, his employment history, and the years Mr. Nole has spent contributing positively to the community.

**Plaintiff Rahshan Paige**

62.     In or about July 2022, Mr. Paige applied to work for Walmart as an entry-level

10

associate.  The job did not require any specified level of education or expertise.

63.    In or about July 2022, Walmart provided Mr. Paige with an offer of employment for the entry-level associate position at a Walmart store in Linden, New Jersey, which Mr. Paige accepted.

64.    After Mr. Paige accepted the offer of employment, he was required to consent to a background check that would be performed by First Advantage, and he completed the forms necessary to do so.

65.    On or about July 28, 2022, Mr. Paige received a copy of his background check report from First Advantage, on behalf Walmart, which listed criminal history.  This background check report listed a "score result" of "Decisional," and stated that it required further review by Walmart "to determine the consumer's eligibility based on background check results."

66.    First Advantage also told Mr. Paige through a letter that he could submit additional information about his criminal history within five business days or otherwise Walmart would "make a final decision about your conditional offer based on the findings in the attached report and/or self-reported information."

67.    In or about August 2022, Mr. Paige was notified that Walmart revoked his job offer.

68.    Walmart denied Mr. Paige employment despite the 8 years that had passed since his most recent conviction.

69.    Moreover, Mr. Paige has strong evidence of subsequent rehabilitation in the form of relevant job experience between the end of his incarceration and his application to Walmart. He also possesses and possessed a forklift certification.

70.    Mr. Paige has subsequently applied to Walmart stores in New Jersey multiple

11

times, but has not been hired.

71.    Mr. Paige's criminal history is not relevant to the positions for which he applied for including the nature of the conviction, the age of the conviction, his employment history, and the years Mr. Paige has spent contributing positively to the community.

**Plaintiff Tierra Eason**

72.    In or about 2021, Ms. Eason applied to work at Walmart as an Order Filler.  The job did not require any specified level of education or expertise.

73.    Soon thereafter, Ms. Eason was asked to interview in person.  After the interview, Walmart provided Ms. Eason with an offer of employment for the entry-level associate position at a Walmart store in New Bern, North Carolina, which Ms. Eason accepted.

74.    After Ms. Eason accepted the offer of employment, she was required to consent to a background check that would be performed by First Advantage, and she completed the forms necessary to do so.

75.    Ms. Eason called multiple times over the following weeks to inquire about the status of her application and was told that it was still being reviewed.  Approximately two weeks later, she received a correspondence rescinding her offer.

76.    Ms. Eason's criminal history is not relevant to the position for which she applied, including the nature of the conviction, the age of the conviction, and her employment history.

<u>**Factual Allegations Common to Plaintiffs and All Putative Class Members**</u>

***Walmart Uses a Uniform and Centrally Administered Criminal History Screening Policy That Is Devoid of Individualized Analysis, Fails to Account for Evidence of Rehabilitation or Mitigating Circumstances, and Has Other Serious Flaws.***

77.    Walmart employs an overbroad criminal history screening policy that is devoid of individualized analysis.

12

78. Pursuant to Walmart's policy, a select, limited group of Walmart employees located at its corporate headquarters evaluate applicant criminal history, employing a uniform and centrally administered process.

79. An applicant's potential supervisors, and the individuals who interview an applicant, have no input whatsoever as to whether Walmart will disqualify an applicant because of their criminal history.

80. In fact, pursuant to policy, Walmart will discipline or even terminate an employee for discussing an applicant's criminal history.

81. While Walmart purports to solicit evidence of rehabilitation or mitigating circumstances to consider as part of its criminal history review, the company lacks sufficient processes to meaningfully account for this information.

82. To the contrary, upon information and belief, Walmart's standard operating procedure is that it typically will not alter a determination that criminal history is disqualifying because of evidence of rehabilitation or mitigating circumstances.

83. For example, in the case of Plaintiff Nole, Walmart failed to properly consider the evidence of rehabilitation and mitigating circumstances that he submitted.

84. Similarly, Walmart failed to properly consider the evidence of rehabilitation provided by Mr. Paige, including in the form of his many years without a conviction.

85. Walmart's criminal background check policy also renders ineligible for hire applicants who purportedly fail to provide a precise rendition of their criminal history on their job application, pursuant to Walmart's uniform policy which states that individuals who "intentionally provide false information during the background check process will not be eligible for hire."

13

86.     As a result of its overbroad policy, Walmart denied employment to Plaintiffs and disproportionately denies employment to countless other Black applicants.

***Walmart's Criminal History Policy Has a Disparate Impact on Black Applicants.***

87.     Title VII and the NJLAD prohibit employment policies and practices that have a disparate impact on protected groups.  *See* 42 U.S.C. §§ 2000e *et seq.*; N.J.S.A. § 10:5-1 *et seq*.

88.     As the U.S. Commission on Civil Rights reported, "when employers use criminal background checks to indiscriminately disqualify all applicants with criminal records, these employers severely curtail employment opportunities for formerly incarcerated people"[3] and "[B]lack and Latino individuals are likelier to have criminal records than white and Asian people[.]."[4]

89.     The U.S. Census Bureau reports that although Black and Latinx individuals comprise only 29% of the U.S. population, they make up 57% of the U.S. prison population.[5] This results in imprisonment rates for Black and Latinx individuals that are 5.9 and 3.1 times the rate for white adults, respectively.[6]  And, "these disparities exist for both the least and most serious offenses."[7]

90.     According to a report to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance, "[i]n 2010, 8% of all adults in the United States had a felony conviction on their record" but "[a]mong African-

---

[3]     *See supra* note 1, at 42.

[4]     *Id.*

[5]     Report of The Sentencing Project to the United Nations Special Rapporteur on Contemporary Forms of Racism, Racial Discrimination, Xenophobia, and Related Intolerance: Regarding Racial Disparities in the United States Criminal Justice System, The Sentencing Project (2018) at 6, https://www.sentencingproject.org/wp-content/uploads/2018/04/UN-Report-on-Racial-Disparities.pdf.

[6]     *See id.* at 6-7.

[7]     *Id.* at 7.

14

American men, the rate was one in three."[8]  Additionally, in 2016, of the 277,000 people

imprisoned for a drug offense, over 56% were Black or Latinx individuals.[9]

91.    Like with the United States, Black and Latinx individuals also are

overincarcerated in New Jersey, when compared with whites.[10]

92.    It is undisputed among social science researchers that Black individuals interact

with the criminal justice system at rates that vastly outnumber the rates of incarceration for

whites.  As a result, the impact of a criminal record is much more severe on Black job applicants

than it is on white applicants.[11]

93.    Audit studies conducted by researchers at Harvard and Princeton Universities also

have found that even among people with criminal records, Black applicants are particularly

disadvantaged in the job market compared to white people with criminal records.[12]

94.    Given these statistics, and Walmart's ubiquitous presence throughout every corner

of the nation, it is more than plausible that by screening for criminal history, Walmart's hiring

---

[8]    *See supra* note 5, p. 7; *see also id.* at 1 (explaining that racial and ethnic disparities among women are also prevalent).

[9]    *See* U.S. Department of Justice, Bureau of Justices Statistics Special Report, *Prevalence of Imprisonment in the U.S. Prison Population, 1974-2001*, 5 (2003); *See generally* Nazgol Ghandnoosh, Ph.D., Race and Punishment: Racial Perceptions of Crime and Support for Punitive Polices (September 2014).

[10]    *See, e.g.*, Prison Policy Initiative, *New Jersey profile*, https://www.prisonpolicy.org/profiles/NJ.html; *see also* Prison Policy Initiative, *Blacks Are Overrepresented in New Jersey Prisons and Jails*, https://www.prisonpolicy.org/graphs/2010percent/NJ_Blacks_2010.html (graph reflecting overincarceration of Black individuals); Prison Policy Initiative, *Hispanics Are Overrepresented in New Jersey Prisons and Jails*, https://www.prisonpolicy.org/graphs/2010percent/NJ_Hispanics_2010.html (graph reflecting overincarceration of Latinx individuals).

[11]    *See generally* Devah Pager, *Marked: Race, Crime, and Finding Work in an Era of Mass Incarceration*, Chicago, IL: University Of Chicago Press (2007).

[12]    Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals Am. Acad.

practices import the nation's severe racial disparities in conviction rates, resulting in a policy and practice that disproportionately screens out Black applicants, when compared with white applicants.

***Walmart's Criminal History Screening Policy Is Not Job-Related or Consistent with Business Necessity.***

95.     Walmart's policy and practice of denying employment to individuals with criminal convictions, including individuals who Walmart deems to have failed to fully or precisely self-disclose their criminal history, is far too over-inclusive to meet the standards of job-relatedness and consistency with business necessity.  Rather, it renders persons ineligible for employment for convictions that do not relate to suitability for employment.

96.     Having a conviction is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job.  Upon information and belief, no reliable studies or empirical data suggest that applicants with criminal records are more likely to engage in terminable offenses.[13]

97.     Walmart has not put into place valid systems to accurately assess evidence of rehabilitation and mitigation, especially as to work history and time since last convictions, which social science establishes are some of the best markers of rehabilitation.

98.     Highlighting that Walmart's criminal history screening policy does not accurately account for its business necessity and/or evaluate the job-relatedness of an applicant's criminal history, Walmart does not consider input from relevant supervisors as part of its analysis of

---

Pol. & Soc. Sci. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 Am. J. Soc. 937, 955-61 (2003).
[13]     *See, e.g.*, Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015).

whether a conviction is job-related, or actually assess an applicant's evidence of mitigation or rehabilitation.

99.    Walmart also routinely hires individuals, and allows them to start working, before completing a full criminal history background check, illustrating that Walmart itself does not view its criminal history screening process as necessary to protect the safety of its workforce or customers.

100.    Moreover, Walmart's requirement that applicants precisely self-disclose their criminal history is not an accurate proxy for determining an applicant's criminal history, honesty, or trustworthiness, and is not otherwise job-related or consistent with business necessity.

101.    For example, the criminal justice system is a complex maze of technical and varied terminology, which leads many persons with criminal records not to realize the full extent or exact phrasing of their criminal history on job applications.  And, an applicant may be unaware of the full extent of their criminal history for many reasons, including because they: (i) pled to a charge that is different from the one of which they were initially accused; (ii) misremembered older convictions; (iii) were provided inaccurate or incomplete information from their criminal defense attorney, (iv) failed to understand how nuanced local legal disclosure laws differ their reporting obligations between states or cities, (v) misunderstood the distinction in legal terminology on the application question (for example, the difference between "accusation," "plea," "arrest," "conviction," or "adjudication") or (vi) did not realize their single plea included multiple separate offenses.

102.    Using self-disclosure of criminal history – including as a memory or integrity test – is therefore not job-related or consistent with business necessity.

103.   Upon information and belief, Walmart has not validated its criminal history policies and practices consistent with the Uniform Guidelines on Employee Selection Procedures.

104.   There also are less discriminatory alternatives that would have better achieved any legitimate business purpose of Walmart.

105.   Less discriminatory alternatives include, but are not limited to: (1) considering all applicants with a record of conviction for a crime that by its nature does not pose a legitimate threat to the public safety or risk of workplace misconduct; (2) instituting a meaningful process for Walmart to account for supervisors' input, and an applicant's evidence of mitigation and/or rehabilitation; (3) limiting the extent of inquiry to recent and serious convictions only, and/or (4) ceasing entirely the practice of running background checks, as lacking an actual demonstrative link to an individual's ability to perform the job in question or risk profile.

106.   Walmart knew or should have known its obligations under CHRIA, namely to limit use of criminal records only to those situations where criminal conviction histories in fact established non-suitability for a particular position.  These obligations are well-established by the plain language of CHRIA and in longstanding case law.

107.   Walmart showed reckless disregard or indifference to its obligations under the law.

108.   Through its actions, Walmart has acted willfully in violating the requirements of CHRIA.

## **CLASS ACTION ALLEGATIONS**

109.   Plaintiffs bring this case as a proposed class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and others similarly situated.

110.   Plaintiffs bring this class action pursuant to Rule 23(a), (b)(2), and/or (c)(4) seeking injunctive and declaratory relief.

111.   Plaintiffs also bring this class action pursuant to Rule 23(a), (b)(3) and/or (c)(4) seeking backpay, monetary damages, and other make-whole relief.

112.   Plaintiffs assert their First Cause of Action against Walmart on behalf of the "Nationwide Class" defined as follows:

> All Black individuals nationwide who, during the relevant statute of limitations period, were denied employment at Walmart based in whole or in part on their criminal history.[14]

113.   Plaintiff Paige asserts his Second Cause of Action against Walmart on behalf of the "New Jersey Class" defined as follows:

> All Black individuals in New Jersey who, during the relevant statute of limitations period, were denied employment at Walmart based in whole or in part on their criminal history. [15]

114.   Plaintiff Nole asserts his Third Cause of Action against Walmart on behalf of the "Pennsylvania Class" defined as follows:

> All individuals in Pennsylvania who, during the relevant statute of limitations period, were denied employment at Walmart based in whole or in part on their criminal history.[16]

115.   Together, the Nationwide Class, New Jersey Class, and Pennsylvania are the "Classes."

116.   The members of the Classes are collectively referred to as "Class Members."

---

[14]   For the avoidance of doubt, this definition includes individuals Walmart denied for purportedly failing to fully or precisely self-disclose their criminal history.
[15]   For the avoidance of doubt, this definition also includes individuals Walmart denied for purportedly failing to fully or precisely self-disclose their criminal history.
[16]   For the avoidance of doubt, this definition also includes individuals Walmart denied for purportedly failing to fully or precisely self-disclose their criminal history.

117.    Plaintiffs reserve the right to amend the definition of above-defined Classes based on discovery or legal developments.

118.    The Class Members identified herein are so numerous that joinder of all members is impracticable.  Walmart is the largest employer in the United States.  The number of applicants harmed by Walmart's violations of the law is far greater than feasibly could be addressed through joinder.  The precise number is uniquely within Walmart's possession, and Class Members may be notified of the pendency of this action by published, mailed and/or e-mailed notice.

119.    There are questions of law and fact common to Class Members, and these questions predominate over any questions affecting only individual members.  Common legal and factual questions include, among others:

a.    Whether Walmart's policy and practice to exclude job applicants based on their criminal history has a discriminatory disparate impact on Black individuals;

b.    Whether Walmart's policy and practice to exclude job applicants based on their criminal history is job-related and/or consistent with business necessity;

c.    Whether Walmart systemically assesses applicants' evidence of rehabilitation or mitigating circumstances when assessing criminal history;

d.    Whether there was a less discriminatory policy and practice that would have met Walmart's legitimate needs;

e.    Whether Walmart violated CHRIA by denying employment to Plaintiff Nole and the Pennsylvania Class based on their criminal convictions;

f.    Whether Walmart was willful in its noncompliance with the requirements of CHRIA;

g.    Whether Class Members are entitlement to damages; and

h.    Whether a declaratory judgment and/or injunctive or other equitable relief is warranted regarding Walmart's policies and practices.

120.    Plaintiffs are members of the Nationwide Class they seek to represent, Plaintiff Paige is a member of the New Jersey Class he seeks to represent, and Plaintiff Nole is a member of the Pennsylvania Class he seeks to represent.  Walmart took discriminatory adverse action against Plaintiffs based on their criminal history.  Walmart also denied employment to Plaintiffs based on their criminal history, without those criminal convictions being related to their suitability for employment in the positions for which they applied.

121.    Plaintiffs' claims are typical of the claims of the Classes they seek to represent, because Plaintiffs: (1) applied for a job with Walmart within the relevant time period; (2) were subjected to the challenged criminal history screening process for applicants; and (3) were denied a position with Walmart because of their criminal history.  This claim is shared by each and every Class Member.  Upon information and belief, it is Walmart's standard practice is to take adverse actions against applicants based on criminal history in a manner that is discriminatory, not job related, inconsistent with business necessity, and otherwise not related to an applicant's suitability for employment.

122.    Plaintiffs will fairly and adequately represent and protect the interests of Class Members because their interests coincide with, and are not antagonistic to, the interests of the Class Members they seek to represent.  Plaintiffs have retained counsel who are competent and experienced in complex class actions, including litigation pertaining to Title VII, criminal background checks, disparate impact litigation, other employment litigation, and the intersection thereof.  There is no conflict between Plaintiffs and the Class Members.

123.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Walmart's uniform policies and practices.  Walmart has acted and/or refused to act on

grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the Class Members as a whole.  Because Walmart has maintained a common policy of denying employment to individuals with criminal histories but may not have explained that policy to all Class Members, many Class Members may be unaware that their rights have been violated.  Judicial economy will be served by the maintenance of this lawsuit as a class action, in that it is likely to avoid the burden which would otherwise be placed on the judicial system by the filing of many similar suits by individually harmed persons.  There are no obstacles to the effective and efficient management of this lawsuit as a class action.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Disparate Impact Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq*.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

124.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs.

125.    Plaintiffs bring this claim on their own behalf and on behalf of the Nationwide Class.

126.    Former named plaintiff Johnson and former named plaintiff Ramos timely filed charges with the EEOC, with class-wide allegations, and received Right to Sue letters, thereby exhausting their administrative remedies.  Furthermore, Plaintiffs and putative class members are entitled to "piggyback" off the EEOC charges of former named plaintiff Johnson and former named plaintiff Ramos.

127.    Walmart's criminal history screening policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) has harmed, and continues to harm,

22

Plaintiffs, and constitutes unlawful discrimination on the basis of race, color, and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

128.    Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) had and continues to have a disparate impact on Black individuals and is neither job related nor consistent with business necessity.  Even if Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

129.    Walmart's conduct has caused, and continues to cause, Plaintiffs and the members of the Nationwide Class losses in earnings and other employment benefits.

130.    Plaintiffs and the Nationwide Class also seek injunctive and declaratory relief to correct Walmart's discriminatory policies and practices.

**SECOND CLAIM FOR RELIEF**
**Disparate Impact Discrimination**
**New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1 *et seq*.**
**(On Behalf of Plaintiff Paige and the New Jersey Class)**

131.    Plaintiff Paige incorporates by reference the allegations in all preceding paragraphs.

132.    Plaintiff Paige brings this claim on his own behalf and on behalf of the New Jersey Class.

133.    Former named plaintiff Ramos timely dual-filed her EEOC charge with the New Jersey State Division on Human Rights, with class-wide allegations, received a Right to Sue letter, and has thus exhausted her administrative remedies.  Furthermore, Plaintiff Paige and

23

putative class members are entitled to "piggyback" off the EEOC charge of former named plaintiff Ramos.

134.    Walmart's criminal history screening policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) has harmed, and continues to harm, Plaintiff Paige, and constitutes unlawful discrimination on the basis of race, color, and/or national origin in violation of N.J.S.A. § 10:5-1 *et seq.*

135.    Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) had and continues to have a disparate impact on Black individuals and is neither job related nor consistent with business necessity.  Even if Walmart's policy and practice of denying employment opportunities to individuals with criminal convictions (including individuals who purportedly fail to fully or precisely self-disclose their criminal history) could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

136.    Walmart's conduct has caused, and continues to cause, Plaintiff Paige and the members of the New Jersey Class losses in earnings and other employment benefits.

137.    Plaintiff Paige and the New Jersey Class also seek injunctive and declaratory relief to correct Walmart's discriminatory policies and practices.

**THIRD CLAIM FOR RELIEF**
**Violation of CHRIA's Use of Information Provision**
**Criminal History Record Information Act, 18 Pa. Cons. Stat. Ann. § 9125**
**(On Behalf of Plaintiff Nole and the Pennsylvania Class)**

138.    Plaintiff Nole incorporates by reference the allegations in all preceding paragraphs.

24

139.    Plaintiff Nole brings this claim on his own behalf and on behalf of the Pennsylvania Class.

140.    CHRIA provides that, "[f]elony and misdemeanor convictions may be considered by the employer *only* to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied."  18 Pa.C.S. § 9125(b) (emphasis supplied).

141.    Plaintiff Nole and the members of the Pennsylvania Class have convictions that Walmart considered when deciding not to offer them employment.

142.    Plaintiff Nole's convictions and the convictions of members of the Pennsylvania Class are not related to their suitability for employment.

143.    Plaintiff Nole and the members of the Pennsylvania Class have been aggrieved by Walmart's denials of employment.

144.    Rather than making assessments of what crimes related to the suitability of applicants for particular jobs, Walmart applies an overbroad criminal history screen that fails to actually assess whether an applicant's convictions are job-related – including by failing to account for evidence of rehabilitation or mitigating circumstances.

145.    As a result of the denials of employment, and the manner in which those denials occur, Plaintiff Nole alleges that Walmart rejects applicants with criminal records, whether or not they were job related or stale, denying job opportunities to those with criminal records to the detriment of Plaintiff Nole and the Pennsylvania Class.

146.    Walmart's actions in denying employment to Plaintiff Nole and the members of the Pennsylvania Class showed reckless disregard or indifference to its obligations under the law.

147.    As a result of its actions, Walmart is liable to Plaintiff Nole and the members of the Pennsylvania Class for injunctive relief, damages and reasonable costs of litigation, and attorneys' fees, pursuant to 18 Pa.C.S. § 9183(a)-(b).

148.    Walmart's conduct has been willful, rendering it liable for exemplary and punitive damages, pursuant to 18 Pa.C.S.§ 9183(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Members pray for relief as follows:

a.    A declaratory judgment that the practices complained of herein are unlawful and violate Title VII, the NJLAD, and CHRIA, and that Walmart acted willfully under CHRIA;

b.    A preliminary and permanent injunction against Walmart and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs, and usages set forth herein;

c.    An order that Walmart institute and carry out policies, practices, and programs that provide equal employment opportunities for applicants with criminal records who would be eligible under application of Title VII and the NJLAD and that Walmart eradicate the effects of past and present unlawful employment practices;

d.    Certification of the case as a class action on behalf of the proposed Classes;

e.    Designation of Plaintiffs as representatives of the members of the Nationwide Class;

f.    Designation of Plaintiff Paige as a representative of the members of the New Jersey Class;

g.    Designation of Plaintiff Nole as a representative of the members of the Pennsylvania Class;

h.    Designation of Plaintiffs' counsel of record as Class Counsel;

i.    Restoring of Plaintiffs and Class Members to their rightful positions at Walmart or those positions equivalent at Walmart (i.e., reinstatement), or in lieu of reinstatements, an order for front pay benefits;

j.    An award of backpay;

26

k.      An award of nominal and/or exemplary damages;

l.      Punitive and/or liquidated damages under the NJLAD to the extent allowable by law;

m.      An award of all statutory damages provided by CHRIA, including actual and real damages for each violation, and exemplary and punitive damages for each violation found to be willful;

n.      An award of costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

o.      Such other injunctive and/or declaratory or other equitable relief that is necessary to correct Walmart's discriminatory policies and practices;

p.      Pre-judgment and post-judgment interest, as provided by law;

q.      Payment of a reasonable service award to the Plaintiffs in this action, in recognition of the services they rendered and will continue to render to Class Members, and the risks they have taken and will take; and

r.      Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: June 5, 2026                          **OUTTEN & GOLDEN LLP**

*/s/ Gregory Chiarello*
Adam T. Klein*
Gregory Chiarello
Christopher M. McNerney*
Eliana J. Theodorou*
Jarron D. McAllister*
685 Third Avenue, 25th Floor
New York, New York 10017
Telephone: (212) 245-1000
Email: atk@outtengolden.com
Email: gchiarello@outtengolden.com
Email: cmcnerney@outtengolden.com
Email: etheodorou@outtengolden.com
Email: jmcallister@outtengolden.com

27

**OUTTEN & GOLDEN LLP**
Ossai Miazad*
Daniel S. Stromberg*
Pooja Shethji*
1225 New York Avenue NW, Suite 1200B
Washington, D.C. 20005
Telephone: (202) 847-4400
Email: om@outtengolden.com
Email: dstromberg@outtengolden.com
Email: pshethji@outtengolden.com

**YOUTH REPRESENT**
Shomari Ward*
Simratpal Kaur*
11 Park Place, Suite 1512
New York, New York 10007
Telephone: (646) 759-8080
Email: sward@outthrepresent.org
Email: skaur@youthrepresent.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs and the Putative Classes*

28

**CERTIFICATE OF SERVICE**

I, Gregory Chiarello, an attorney, hereby certify that on June 5, 2026, I caused to be served a copy of the foregoing **Revised Third Amended Class Action Complaint** in the above-entitled action using the CM/ECF system, which sent notification of this filing to all counsel of record.

*/s/ Gregory Chiarello*
Gregory Chiarello

29