# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN NOLE, RAHSHAN PAIGE, and TIERRA EASON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WALMART INC.,<br><br>Defendant. | Civil Action No.: 21-13827(BRM)(AME)<br><br>Hon. Brian R. Martinotti, U.S.D.J.<br>Hon. Andre M. Espinosa, U.S.M.J.<br><br>**SPECIAL MASTER REPORT AND RECOMMENDATION** |

**<u>Hon. Freda L. Wolfson (ret.), Special Master</u>**:

This matter comes before me on Walmart Inc.'s ("Walmart" or "Defendant") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the Hon. Brian R. Martinotti, U.S.D.J., referred to me for a Report and Recommendation. Walmart seeks dismissal of Plaintiffs Rahshan Paige and Tierra Eason's ("Plaintiffs") First Claim for Relief, alleging disparate-impact discrimination under Title VII, and dismissal of Paige's Second Claim for Relief, alleging disparate-impact discrimination under the New Jersey Law Against Discrimination ("NJLAD").[1] For the reasons that

[1] After the parties completed briefing, Walmart notified me that, following Eason's October 7, 2026 deposition, it learned that she had signed agreements requiring individual arbitration of her claims. Walmart stated that it intends to move to compel arbitration and requested that its motion to dismiss be held in abeyance as to Plaintiff Eason. Accordingly, this Report and Recommendation does not address the motion to dismiss as it relates to Eason or assess the sufficiency of the allegations concerning her claims. While Plaintiffs submitted a response opposing such a stay, I find it appropriate to address Walmart's position regarding arbitration after scheduling a full briefing should that issue be referred to me. Indeed, it would be premature to address the merits of Eason's claims if those claims belong in an arbitral

follow, I recommend granting Defendant's motion as to Plaintiff Paige, but I further recommend to permit Paige to amend his allegations.

## BACKGROUND AND PROCEDURAL HISTORY

I start with the relevant procedural history as some of Plaintiff's arguments rest on certain rulings made by the Court. On June 7, 2024, Plaintiffs moved for leave to amend the complaint to substitute John Nole and Rahshan Paige for the then-named plaintiffs, Jacqueline Ramos and Edwin Johnson. (*See* ECF No. 166.) In my January 31, 2025 Report and Recommendation ("R&R"), I recommended granting the motion and permitting Nole and Paige to replace Ramos and Johnson as named plaintiffs. I concluded that Paige could rely on the earlier-filed EEOC charge and that Nole, who had filed his own EEOC charge, could proceed with his individual claim. I reserved on the question whether Nole could represent a class extending to the period covered by the earlier charges.

After supplemental briefing on that issue, I issued a second R&R on March 17, 2025. I recommended deferring the question of the temporal scope of the class Nole could represent until class certification, after the parties completed class discovery. I reaffirmed my recommendation that Nole and Paige be permitted to substitute as named plaintiffs and stated that discovery could proceed on the proposed class period dating back to 2019. Importantly, and notably, Walmart did not oppose then-Plaintiffs' motion to amend based on the sufficiency of the pled claims. The Court

forum. Additionally, Walmart's motion does not seek dismissal of Plaintiff John Nole's claims.

adopted both of my R&Rs and granted Plaintiffs' motion to amend on May 7, 2026. (*See* ECF No. 209.)

The parties thereafter conferred regarding a revised Third Amended Complaint (the "Complaint") that would add Tierra Eason as a plaintiff. Walmart did not oppose adding Eason, but reserved its right to move to dismiss her claims. The parties submitted a stipulation providing for the filing of the revised complaint, which Plaintiffs filed on June 5, 2026. The Court signed the stipulation on June 8, 2026. (*See* ECF Nos. 210–12.) Following its reservation, on July 15, 2026, Walmart filed the instant motion to dismiss.

Plaintiffs' theory of their case rests on allegations that Walmart uses an overbroad criminal-history screening policy that disproportionately excludes Black applicants from employment. (RTAC ¶¶ 1–4, 15–16.) According to the Complaint, a small group of Walmart employees at corporate headquarters evaluates applicants' criminal histories through a uniform, centrally administered process. (*Id.* ¶ 78.) Applicants' potential supervisors and interviewers have no input into whether an applicant will be disqualified. Moreover, while Walmart purports to solicit evidence of rehabilitation or mitigation, Plaintiffs allege that Walmart lacks sufficient process to meaningfully account for those circumstances. (*Id.* ¶¶ 79–82.) Plaintiffs allege that, as a result of this policy, Walmart denies employment to qualified applicants based on criminal history, particularly with respect to applicants whose convictions are unrelated to the positions sought. (*Id.* ¶¶ 15, 86.) The Complaint further alleges that

Black individuals are disproportionately affected by criminal-history screening practices. (*Id.* ¶¶ 87–94.)

As relevant to this motion, Paige alleges that he is Black and had felony convictions that occurred at least eight years before his application to Walmart. (*Id.* ¶¶ 9, 33.) He applied in or about July 2022 for an entry-level associate position at a Walmart store in Linden, New Jersey; the position did not require a specified level of education or expertise. (*Id.* ¶ 62.) Walmart offered him the position, and he accepted. (*Id.* ¶ 63.) He then completed the forms authorizing First Advantage, a third-party vendor, to conduct a background check. (*Id.* ¶ 64.)

On or about July 28, 2022, Paige received a First Advantage report, prepared on Walmart's behalf, that listed his criminal history and was marked "Decisional," suggesting that Walmart would conduct further review to determine his eligibility based on the background-check results. (*Id.* ¶ 65.) First Advantage informed Paige that he could submit additional information about his criminal history within five business days; otherwise, Walmart would make a final decision about his conditional offer based on the report and/or information he had self-reported. (*Id.* ¶ 66.) The Complaint is silent as to whether Paige submitted any information to Walmart. Shortly thereafter, in or about August 2022, Walmart allegedly "revoked" Paige's offer. (*Id.* ¶ 67.)

The Complaint further alleges that Paige was qualified for the position and that his criminal history was not relevant to the positions for which he applied, considering the nature of the convictions, their age, his employment history, and his

contributions to the community. (*Id.* ¶¶ 10–11, 68, 71.) Paige maintains that he had relevant work experience after his incarceration and held a forklift certification, which the Complaint identifies as evidence of rehabilitation. (*Id.* ¶ 69.) Paige also claims that he later applied to multiple Walmart stores in New Jersey but was not hired. (*Id.* ¶ 70.) More generally, the Complaint alleges that Walmart denied Plaintiffs, including Paige, employment because of their criminal histories and subjected them to the challenged screening process. (*Id.* ¶¶ 120–21, 127.)

## DISCUSSION

### I. Motion to Dismiss Pursuant to Fed. Civ. P. 12(b)(6)

As a preliminary matter, Plaintiffs argue that the Court already determined that Paige stated a sufficient claim when it granted leave to amend based on my recommendations. They note that futility is assessed under the same standard as a motion to dismiss and contend that Walmart's present challenge is therefore foreclosed by the law-of-the-case doctrine. Walmart responds that the prior ruling did not adjudicate the sufficiency of Paige's substantive allegations and that a decision granting leave to amend does not preclude a later determination under Rule 12(b)(6). I agree that the prior amendment proceedings did not resolve the issue now before me.

In my January 31, 2025 R&R, I addressed and rejected Walmart's futility objection that Paige could not proceed under Title VII without filing his own EEOC charge. I concluded that Paige could rely on the Single Filing Rule. I also expressly noted that Walmart did not challenge the substantive sufficiency of the claims and

that I therefore need not review those allegations. (*See* Jan. 31, 2025 R&R at 24 n.17, 30.) My March 17, 2025 R&R addressed the temporal scope of the class Nole could represent; it also did not address the sufficiency of Paige's substantive allegations.

Although the futility inquiry and the Rule 12(b)(6) inquiry apply the same standard of legal sufficiency, that does not mean the prior amendment ruling decided every potential challenge to the proposed pleading. Indeed, the issue presented here—whether Paige's allegations plausibly connect Walmart's screening policy to his non-hire—was not raised as a ground for futility and was not decided in the prior R&Rs. And, since the law-of-the-case doctrine counsels only against reconsidering issues resolved earlier in the litigation, *Pub. Interest Research Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) (holding that "[t]he law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation"), the Court's subsequent decision granting leave to amend does not foreclose consideration the issue raised here.

Nor do I find that Walmart waived its challenge by failing to raise it during the amendment proceedings. Rule 12(g)(2) limits a party that has made a motion under Rule 12 from making a successive Rule 12 motion raising a defense that was available but omitted from the earlier motion. *See* Fed. R. Civ. P. 12(g)(2). Rule 12(h)(2), in turn, provides that a failure-to-state-a-claim defense may be raised in a pleading permitted under Rule 7(a), by a motion under Rule 12(c), or at trial. *See* Fed. R. Civ. P. 12(g)(2), 12(h)(2). In *Leyse v. Bank of America National Association*, the Third Circuit held that Rule 12(g)(2) barred a second Rule 12(b)(6) motion raising a

ground available when the first Rule 12(b)(6) motion was filed; Rule 12(h)(2) did not authorize a successive Rule 12(b)(6) motion. 804 F.3d 316, 320-21 (3d Cir. 2015).

That rule does not bar Walmart's present motion. Walmart's opposition to Plaintiffs' motion to amend was not a prior motion under Rule 12. Walmart's futility objection in the context of Plaintiffs' prior motion to amend concerned administrative exhaustion, not the substantive sufficiency of Paige's allegations. The present motion is therefore not a successive Rule 12 motion raising a ground omitted from an earlier Rule 12 motion. In short, the fact that Walmart could have raised an additional futility objection in the amendment proceedings does not, by itself, convert that omission into either a prior adjudication or a waiver of the defense. Accordingly, I reject Plaintiffs' law-of-the-case argument and find that Walmart's present challenge is not barred on that basis or waived by its failure to raise substantive pleading sufficiency during the amendment motion practice. I proceed to consider the merits of Walmart's motion as to Paige.

### A. Rule 12(b)(6)

As an initial matter, the parties disagree on the application of Rule 12(b)(6). While they do not appear to dispute the governing plausibility standard, they dispute what it requires here. Walmart contends that Paige's allegations describe a sequence of events but do not plausibly connect his non-hire to the challenged policy. Plaintiffs respond that the alleged uniform policy, together with Paige's application, conditional offer, criminal history, and subsequent rejection, supports that inference without requiring him to plead Walmart's internal decision-making process. Before I assess

the sufficiency of Plaintiffs' allegations, I will set forth the relevant dismissal standard.

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences from those allegations in the plaintiff's favor. *Revell v. Port Auth.* 598 F.3d 128, 134 (3d Cir. 2010). The court must then determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

To survive dismissal, the complaint must contain sufficient factual matter to state a facially plausible claim. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016); *Berk v. Choy*, 607 U.S. 187, 193 (2026) (reaffirming that under Rule 12(b)(6), the court "asks only whether the complaint's factual allegations, if taken as true, 'state a claim to relief that is plausible on its face'" (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is plausible when its factual allegations permit the reasonable inference that the defendant is liable for the alleged misconduct. *Connelly*, 809 F.3d at 786. This standard does not impose a probability requirement, but it demands more than a sheer possibility of unlawful conduct. *Id.*

Pursuant to *Twombly* and *Iqbal*,[2] the Third Circuit applies a three-step analysis: the court identifies the elements of the claim, disregards allegations that are merely conclusory, and then assumes the truth of the remaining well-pleaded facts to determine whether they plausibly establish an entitlement to relief. *Id.* at

[2] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

787. Although legal conclusions and unwarranted inferences are not entitled to an assumption of truth, the court may not weigh the evidence or reject well-pleaded allegations merely because they appear unlikely to be proven. *Id.*

### B. Sufficiency of Paige's Allegations

Paige asserts two claims: disparate-impact discrimination under Title VII and the NJLAD claims.[3] "Title VII's disparate-impact provision prohibits employment practices that have the unintentional effect of discriminating based on race." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 476 (3d Cir. 2011) (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)); *Newark Branch, NAACP v. City of Bayonne, N.J.*, 134 F.3d 113, 121 (3d Cir. 1998). The statue provides:

> An unlawful employment practice based on disparate impact is established . . . only if . . . a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity[.]

42 U.S.C. § 2000e-2(k)(1)(A)(i). Based on the statute, therefore, a plaintiff "can show that facially neutral employment practices are discriminatory if they have a disparate impact on a protected class." *Green v. City of Phila.*, No. 21-1034, 2022 U.S. App.

---

[3] The New Jersey Supreme Court has held that a disparate impact claim's requirements under the NJLAD are based upon the requirements of federal law. *Gerety v. Atlantic City Hilton Casino Resort*, 184 N.J. 391, 399 (2005) (citing *Esposito v. Twp. of Edison*, 306 N.J. Super. 280, 289-90 (App. Div. 1997)). As such, and the parties do not disagree, I need not separately analyze Paige's allegations under NJLAD.

LEXIS 10624, at *6 (3d Cir. Apr. 20, 2022) (citing *Ricci v. DeStefano*, 557 U.S. 557, 577-78 (2009)).

The Third Circuit has advised that disparate impact claims follow the familiar three-step burden-shifting framework. First, the plaintiff must establish a *prima facie* case by demonstrating that a facially neutral employment practice caused a significantly discriminatory pattern affecting a protected class. *Id.* at *6. Next, if the plaintiff establishes disparate impact, the burden then shifts to the employer to demonstrate that the challenged practice is job related for the position in question and consistent with business necessity. *NAACP*, 665 F.3d at 477. Finally, even after the employer establishes job relatedness and business necessity, the plaintiff may still prevail by demonstrating an alternative employment practice would have less discriminatory effects and showing that the employer refused to adopt it. *Id.*; *MacLean v. Wipro Ltd.*, No. 20-3414, 2022 U.S. Dist. LEXIS 177231, at *18 (D.N.J. Sep. 29, 2022).

At the pleading stage, however, the burden on a Title VII plaintiff "is much less onerous." *Ladd v. Boeing Co.*, 463 F. Supp. 2d 516, 523 (E.D. Pa. 2006) (quoting *Powell v. Ridge*, 189 F.3d 387, 394 (3d Cir. 1999), *overruled on other grounds by Alexander v. Sandoval*, 532 U.S. 275 (2001)); *Ackie v. Phila. Gas Works*, No. 19-4275, 2020 U.S. Dist. LEXIS 17106, at *5 (E.D. Pa. Jan. 31, 2020); *Williams v. Compassionate Care Hospice*, No. 16-2095, 2016 U.S. Dist. LEXIS 101669, at *12-13 (D.N.J. Aug. 3, 2016). To survive dismissal, all the plaintiff has to do is plead facts sufficient to allege that a facially neutral policy or practice's adverse effects fall

disproportionately on a group protected by Title VII to which he or she belongs. *Ladd*, 463 F. Supp. 2d at 523; In other words, "a plaintiff need not plead a *prima facie* case, but must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Royal v. Aveanna Health Care*, No. 23-228, 2024 U.S. Dist. LEXIS 157979, at *4 (W.D. Pa. Aug. 26, 2024) (citing *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020)); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002). In short, a plaintiff may establish a disparate impact claim by identifying a specific employment practice, alleging that a disparate impact on some protected class exists, and alleging the causal relationship between the two. *Royal*, 2024 U.S. Dist. LEXIS 157979 at *3-4. As to the causal relationship, the plaintiff must plausibly connect the identified practice to the alleged disparate impact rather than merely allege that both exist. *Id.*

Here, Walmart contends that Paige has not plausibly alleged that its criminal-background-check policy caused his non-hire. It acknowledges that the Complaint alleges Paige applied for an entry-level associate position, accepted an offer contingent on a background check, received a "Decisional" report requiring further review, was given five business days to submit additional information, and was later notified that Walmart had revoked his offer. (RTAC ¶¶ 62–67.) But, in Walmart's view, those allegations establish only a sequence of events. Walmart points out that the Complaint does not allege whether Paige submitted additional information, whether the background-check process was completed, whether Walmart made a final adverse determination under the challenged policy, or whether his criminal

history rendered him ineligible for the position. Thus, Walmart submits that generalized allegations that "Plaintiffs" were denied employment because of their criminal histories do not supply the missing facts as to Paige.

Plaintiffs respond that the Complaint identifies Walmart's "uniform and centrally administered" criminal-history screening policy and alleges that Paige is Black, has felony convictions, applied for and received a conditional offer of employment, underwent a criminal-history assessment, and was denied employment although his criminal history was unrelated to the position. (*Id.* ¶¶ 9, 33, 62–71, 77–78, 120–21.) Plaintiffs contend that these allegations plausibly connect the challenged policy to Paige's non-hire; Walmart's demand for allegations about the final stages of its internal review would impose an unwarranted level of detail at the pleading stage. Plaintiffs also assert that the Complaint adequately alleges disparate impact, although they understand Walmart's challenge to focus on whether the identified policy caused Paige's denial of employment.

Reviewing the Complaint as a whole, I find that the Complaint falls short of stating a Title VII disparate-impact claim on Paige's behalf. I begin with the elements of the claim that Plaintiffs adequately allege, which Walmart does not challenge on this motion. First, the Complaint identifies the challenged employment practice and policy with sufficient specificity: Walmart allegedly uses a uniform, centrally administered process in which a limited group of employees at corporate headquarters reviews applicants' criminal histories, without input from the applicants' prospective supervisors or interviewers. The Complaint further alleges

that the process lacks meaningful individualized review, does not adequately account for rehabilitation or mitigating circumstances, and may disqualify applicants for allegedly imprecise self-disclosure. (RTAC ¶¶ 77–85.) These allegations describe more than the general use of background checks; they identify the screening practices, and Walmart's alleged policy that Plaintiffs contend caused the disparate impact.

Next, the Complaint alleges sufficient facts supporting a plausible inference that the policy disproportionately affects Black applicants. It cites statistics concerning racial disparities in incarceration and felony convictions, including in New Jersey, and alleges that Black applicants with criminal records face particular disadvantages in the job market. (*Id.* ¶¶ 88–94.) Taken together with the allegation that Walmart applies the challenged process uniformly nationwide, those facts permit a reasonable inference—at the pleading stage—that the policy disproportionately screens out Black applicants. Whether the cited statistics and other evidence ultimately establish a significant disparate impact is a matter for a developed record. Again, Defendant does not challenge this aspect of the pleadings on this motion.

However, with respect to the connection between Walmart's screening policy and the revocation of Paig's employment offer, the Complaint's allegations fall short. Paige alleges that he is Black and has felony convictions; that Walmart required him to undergo a background check after he accepted an offer; that the resulting report identified his criminal history and required further review by Walmart to determine his eligibility; and that Walmart revoked his offer the following month. (*Id.* ¶¶ 9, 33,

62–67.) The notice accompanying the report stated that Walmart would make a final decision based on the report and any information Paige provided. The Complaint further alleges that Paige's criminal history was unrelated to the position and that Walmart failed to consider evidence of his rehabilitation. (*Id.* ¶¶ 68–71, 84.)

The Complaint goes on to allege that Walmart's process includes soliciting and considering evidence of rehabilitation and other mitigating circumstances, although Walmart allegedly lacks adequate procedures to give that evidence meaningful consideration. (*Id.* ¶¶ 81–84.) Thus, whether Paige submitted information for Walmart to consider bears on what occurred in his individual review. Although paragraph 84 alleges generally that Paige provided evidence of rehabilitation, the Complaint does not identify what he submitted, when he submitted it, or whether he responded to First Advantage's notice inviting additional information. Nor does it allege what information Walmart had in its possession to consider or why it ultimately revoked Paige's offer. The report's "Decisional" designation indicated that further review was required; it did not itself reflect a final adverse determination.

The timing of the revocation and the allegations about Walmart's general policy support a possible connection, but they do not resolve the missing link between that policy and Paige's non-hire. Without facts about what occurred during Paige's review, including whether Walmart received information from Paige for its consideration, the Complaint leaves unclear whether Walmart completed the challenged screening process and revoked the offer simply because of his criminal history, or even whether the offer was revoked because the application was treated

as incomplete. The generalized allegations that Walmart used a uniform policy and that the policy disproportionately affected Black applicants do not, by themselves, establish that the policy caused the adverse employment decision made against Paige.

The allegations concerning Nole illustrate the difference. The Complaint alleges that, after receiving the same notice, Nole submitted mitigating information and that Walmart then revoked his offer. (RTAC ¶¶ 53–57.) Those allegations provide a factual link between the review process and the adverse decision. Paige's allegations do not provide a comparable account. This comparison does not require—as Paige suggests would be inappropriate—Paige to plead every detail of Walmart's internal review; rather, it underscores that the Complaint must allege some facts connecting the challenged practice to his particular non-hire.

Accordingly, although the Complaint plausibly alleges a challenged policy and a disparate impact on Black applicants, it does not plausibly allege that the policy caused Paige's non-hire. I recommend that Walmart's motion to dismiss be granted as to Paige's Title VII disparate-impact and NJLAD claims. That does not end my inquiry. In lieu of dismissal with prejudice, Paige seeks an opportunity to amend his claims, which I discuss below.

### C. Leave to Amend

Plaintiffs alternatively request leave to amend if the Court finds Paige's allegations insufficient. Rule 15 provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Although Walmart opposes further amendment because of the age of this action, the number of prior amendments, and

Plaintiffs' failure to proffer specific new allegations, the relevant consideration is that this is the first motion challenging the sufficiency of Paige's individual claims. The prior amendment proceedings did not adjudicate whether those claims stated a claim for relief. And although Walmart identified the asserted deficiency in its pre-motion letter, Paige has not previously had an opportunity to amend after a ruling identifying a pleading defect in his individual claim.

The deficiency is discrete: the Complaint does not adequately allege what occurred during Paige's review, including what information Walmart possessed, that form the basis for Walmart to revoke his offer. I cannot find, at this stage, that this omission is incurable. Additional facts about whether Paige responded to First Advantage's notice, what information he provided, and how Walmart resolved the review could clarify and establish the connection between the challenged policy and the revocation. Nor does allowing one final amendment appear to impose undue prejudice; the amendment would concern Paige's existing claim and the circumstances of his own application. On this record, I cannot conclude that amendment would necessarily be futile. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency").

Accordingly, if the Court adopts the recommendation to dismiss Paige's claims, I recommend granting him one final opportunity to amend his pleading to address

the deficiency identified above. If he cannot allege curative facts, the claims may then be dismissed with prejudice.

If neither party files an objection within 21 days, Plaintiff Paige is directed to file an amended complaint consistent with this R&R within 14 days after the objection period expires.

Dated: October 26, 2026

*/s/ Freda L. Wolfson*
Hon. Freda L. Wolfson (ret.)
Special Master